#23670-a-SLZ

**2006 SD 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CINDY SCHAEFER, on behalf
of S.S., C.S., and K.S.,

and

ELDA SCHELLER, on behalf of
D.S.,                                               Petitioners and Appellees,

v.

EDWARD LIECHTI, JR.,                    Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
FAULK COUNTY, SOUTH DAKOTA

* * * *

HONORABLE LARRY H. LOVRIEN
Judge

* * * *

ROSE ANNE WENDELL                   Attorney for petitioners
Pierre, South Dakota                      and appellees.

H. I. KING of
Tonner, Tobin and King                   Attorneys for respondent
Aberdeen, South Dakota                  and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 9, 2006

OPINION FILED **03/01/06**

ZINTER, Justice

[¶1.] William Edward Liechti appeals the circuit court's entry of a stalking protection order. Both parties seek appellate attorney's fees. We affirm the circuit court's entry of the protection order and deny both parties' requests for appellate attorney's fees.

## Facts and Procedural History

[¶2.] Doug and Cindy Schaefer (the Schaefer parents) are the parents of S.S., C.S., and K.S., who were fifteen, thirteen, and eleven in the summer of 2004. The Schaefers lived on the edge of Seneca, South Dakota, and operated a farming business. Elda Scheller (Scheller) is the grandmother and guardian of D.S., who was seventeen in the summer of 2004. The Schellers also lived in Seneca. D.S. and the Schaefer children (collectively referred to as the children) are friends.

[¶3.] These children drove "four-wheelers," also known as ATV's, which were not licensed. The children also drove the four-wheelers without driver's licenses; however, D.S. and S.S. eventually obtained their licenses. D.S. used his four-wheeler to take care of horses on the edge of town, and he obtained "permission" from the Mayor of Seneca and the Faulk County Sheriff to drive on a prescribed route. The Schaefer children also received "permission" to drive their four-wheeler on a prescribed route to their property.

[¶4.] William Edward Liechti, Jr., a resident of Seneca since 1971, lived approximately two and a half blocks from the Schaefers. He owned and operated a vehicle repair business until he sold it in 2002. From approximately 2000 to 2004,

Liechti had numerous confrontations with the children regarding their operation of the four-wheelers in the city and on the highway.

[¶5.] The confrontations escalated in the summer of 2004. Two of the confrontations caused the Schaefer parents and Scheller to seek stalking protection orders against Liechti. The first incident occurred in July when C.S. and S.S. drove a four-wheeler into town to pick up a friend. On their way back to the Schaefer house, Liechti observed the children. When Liechti stopped his pickup, the children drove behind him and into a school lot. Liechti backed up and followed them. In order to get away from Liechti, the children had to drive their four-wheeler into a nearby wheat field.

[¶6.] The second incident occurred in August when Liechti contacted Timothy Bormann, the Faulk County State's Attorney. Liechti reported that he had observed the children racing and "tearing around" Seneca on four-wheelers and motorcycles. Bormann informed Liechti that he would have to file a complaint with the Sheriff's office. Liechti filed a complaint, but upon investigation, it was determined that Liechti could not have observed what he alleged. Therefore, the Sheriff and Bormann agreed that Liechti's complaint would not be prosecuted. Bormann testified that when Liechti was told they were not going to prosecute, Liechti "made a comment to the effect of, if this was all the help I was going to get, I could have just as well gotten a shotgun and taken care of it myself."

[¶7.] Based on these and numerous other incidents, the Schaefer parents and Scheller filed for a protection order on behalf of the children. A temporary stalking order was entered against Liechti on August 27, 2004. Following a trial,

the court entered a permanent order of protection against stalking or physical injury. On appeal we are asked to determine the following issues:

1) Whether the court's findings of fact were clearly erroneous;

2) Whether the trial court erred in determining that Liechti stalked the children, which raises the following sub-issues:
a) Whether Liechti's conduct amounted to a series of acts that established a course of conduct;
b) Whether Liechti's actions were undertaken for a legitimate purpose;
c) Whether Liechti's actions were performed maliciously;
d) Whether Liechti's actions constituted a credible threat that placed the children in reasonable fear of great bodily injury;

3) Whether either party is entitled to appellate attorney's fees.

## Standard of Review

[¶8.] The trial court's decision to grant or deny a protection order is reviewed under the same standard that is "used to review the grant or denial of an injunction." Goeden v. Daum, 2003 SD 91, ¶5, 668 NW2d 108, 110 (citation omitted). First, we determine whether "the trial court's findings of fact were clearly erroneous." *Id.* (citation omitted). We will not set aside the trial court's findings of fact unless, after reviewing all of the evidence, "we are left with a 'definite and firm conviction that a mistake has been made.'" People *ex rel.* O.S., 2005 SD 86, ¶9, 701 NW2d 421, 425 (quoting *In re* T.A., 2003 SD 56, ¶5, 663 NW2d 225, 229 (citing *Matter of* A.M., 292 NW2d 103, 105 (SD 1980))). Furthermore, "[t]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the

evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence." Baun v. Estate of Kramlich, 2003 SD 89, ¶21, 667 NW2d 672, 677 (citation omitted). If the trial court's findings of fact are not clearly erroneous, we "must then determine whether the trial court abused its discretion in granting or denying the protection order." *Goeden,* 2003 SD 91, ¶5, 688 NW2d at 110 (citation omitted).

### Analysis and Decision

*1) Were the trial court's findings of fact clearly erroneous?*

[¶9.]     Throughout his briefs, Liechti disagrees with many of the trial court's findings of fact. For example, Liechti contends that, contrary to the trial court's findings: 1) he did not watch S.S. with binoculars while she was swimming; 2) he only used his binoculars to watch the children playing in their tree house on one occasion; 3) he did not attempt to stop the Schaefer children on numerous occasions; 4) he did observe the racing that he reported to law enforcement; and 5) he did not say anything about a shotgun after learning that charges would not be brought against the children. However, the evidence presented at trial supported the trial court's contrary findings.

[¶10.]     Most of the evidence presented at the trial was live witness testimony. The record reflects that while Liechti said one thing, the children, the Schaefer parents, Scheller, and State's Attorney Bormann said another.[1] Therefore,

---

1.     For example, Liechti disagreed with State's Attorney Bormann's testimony regarding the August racing incident. Liechti contended that he could identify the drivers and the vehicles, that he was never told the children would not be prosecuted, that *he* made the decision not to prosecute the

(continued . . .)

the trial court's credibility determination played a crucial role in the resolution of these factual disputes.  Ultimately, the trial court made specific findings that Liechti was not credible and that the children, the Schaefer parents, and Scheller were credible.[2]  Because we give due regard to the trial court's opportunity to observe witnesses and judge their credibility, and because the trial court expressly found that Liechti was not credible, we conclude that the trial court was not clearly erroneous in accepting the children's, the Schaefer parents', and Scheller's version of the facts.

_____

(. . . continued)
children, and that he never mentioned anything about a shotgun.  On the other hand, Bormann testified that Liechti's complaint alleged that there were some four-wheelers and a motorcycle "tearing" around the town and that S.S. was driving the motorcycle.  Upon further investigation, it was discovered that the motorcycle Liechti identified was disassembled and not operational at the time of the alleged incident.  Furthermore, Bormann testified that it was his impression Liechti had not actually seen the incident and that he told Liechti not to move forward with the complaint at that time.  Bormann stated that after he advised Liechti not to move forward with the complaint, Liechti made a comment to the effect that "if this was all the help I was going to get, I could have just as well gotten a shotgun and taken care of it myself."

Liechti also argued at trial and contends in his brief that he has only talked to S.S. two times in the last two years.  However, three pages later in the same brief, Liechti admits that he has "confronted S.S. [on] numerous occasions because S.S., on numerous occasions, [had been] disturbing the peace . . . and violating the law."

2.    The trial court's findings of fact indicate that:
12.  Liechti's testimony, including his denial of many of the events testified to by the Petitioners, is not credible.
13.  The testimony of the minor children, the Schaefer parents and Elda Scheller is credible and is corroborated by other testimony, including the testimony of State's Attorney Timothy Bormann.

*2) Whether the trial court erred in determining that Liechti stalked the children.*

[¶11.] Liechti contends that the trial court erred in determining that his conduct amounted to stalking. SDCL 22-19A-1 defines stalking as:

> Any person:
> (1) Who willfully, maliciously, and repeatedly follows or harasses another person;
> (2) Who makes a credible threat to another person with the intent to place that person in reasonable fear of death or great bodily injury; or
> (3) Who willfully, maliciously, and repeatedly harasses another person by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication; is guilty of the crime of stalking.

This case involves harassment under SDCL 22-19A-1(1) and a credible threat under SDCL 22-19A-1(2). Harass "means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose." SDCL 22-19A-4. "Course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." SDCL 22-19A-5. A "credible threat" is "a threat made with the intent and the apparent ability to carry out the threat." SDCL 22-19A-6.

[¶12.] Liechti argues that his conduct did not amount to "harassment" under SDCL 22-19A-1(1) because: 1) his actions did not comprise a series of acts that established a course of conduct and 2) he acted for a legitimate purpose. Liechti further argues that his conduct did not constitute stalking under SDCL 22-19A-1(1) because his actions were not performed maliciously. Finally, Liechti argues that he did not make credible threats that placed the children in reasonable fear of great

bodily injury as required under SDCL 22-19A-1(2). However, the evidence does not support Liechti's contentions.

*Course of Conduct*

[¶13.]     Notwithstanding Liechti's contention, his actions established a course of conduct. Liechti admitted that he watched C.S. and the other children through his binoculars while they were playing in a tree house on one occasion. However, Liechti actually "watched" C.S. and the other children on many occasions. C.S. testified that Liechti would "always watch us." C.S. further revealed that Liechti would watch her and her friends with his binoculars while they were playing in a tree house and while they were swimming at a friend's house. She indicated that Liechti has watched her "too many" times and that she was scared to go into town alone because of him. The record also reflects that Liechti chased C.S. and S.S. into the wheat field in July 2004, and made, what the sheriff and state's attorney believed to be, a false complaint that S.S. was tearing around town and racing on a motorcycle in August 2004. While testifying, Liechti also admitted that he chased S.S. to his home on a separate occasion in 2000 or 2001.[3] Finally, Liechti admitted in his briefs that he confronted S.S. on "numerous occasions."

[¶14.]     Liechti also engaged in a course of conduct with D.S. On one occasion, Liechti approached D.S. and told him that he was trespassing despite the fact D.S.

---

3.     The following excerpt of Liechti's testimony displays his inadvertent admission to chasing S.S. on an occasion prior to the incident in July 2004:
       Q. Have you ever chased or followed these Schaefer kids around?
       A. Just young [S.S.] that one time up to his place.
       Q. Well, let's talk about that. That would be July of last year?
       A. Oh, no. That was three years ago or more.

was on Scheller's private property. Liechti also followed D.S. while he was driving his four-wheeler and stopped him to discuss various traffic violations. Further, D.S. testified that he observed Liechti watching him with binoculars while D.S. was driving his four-wheeler.

[¶15.]    The Schaefer parents and Scheller corroborated and amplified the children's course of conduct testimony. Doug Schaefer described Liechti's conduct as "canvassing" the children. He also described one series of events when Liechti drove by the Schaefer home thirty-five times in one day. Similarly, Elda Scheller testified that Liechti followed D.S. "often enough to concern [her] " and that at one point, Liechti would call Scheller four to five times a day to discuss D.S.'s various faults. Considering all the evidence, we agree that Liechti engaged in a course of conduct toward the children.

*Legitimate Purpose*

[¶16.]    Liechti, however, points out that the definition of "harass" also requires that the offending conduct serve no legitimate purpose. Liechti argues that his conduct served a legitimate purpose because he was concerned about the children driving four-wheelers in violation of the law. However, we believe that even if the children had violated the law, Liechti's surveillance of the children through binoculars while they were swimming, while they were in a tree house, and on other occasions was not related to his purported concern of ensuring compliance with South Dakota's motor vehicle laws. Moreover, he had no right to assume the role of law enforcement and create dangerous situations by chasing the children in

his pickup. Rather, Liechti's remedy was to take his concerns and complaints to the police or other public officials responsible for enforcement of the law.

### Malice

[¶17.]     Liechti contends that even if his actions did amount to a "course of conduct," they were not performed maliciously.[4]  SDCL 22-1-2 defines maliciously as "a wish to intentionally vex, annoy, or injure another person, established either by proof or presumption of law."  SDCL 22-1-2(1)(a).  Considering Liechti's previously described conduct of "canvassing" the children, watching them through binoculars, driving by the Schaefer home thirty-five times in one day, confronting the children on numerous occasions, chasing them into a wheat field, and filing false complaints, we conclude that the trial court could have found that Liechti intentionally engaged in vexatious and annoying conduct.

### Credible Threats

[¶18.]     Liechti argues that the trial court erred in finding that he made credible threats to the children that placed them in reasonable fear of great bodily injury.  Once again, however, the testimony of the children, the Schaefer parents, and Scheller supports the trial court's findings.  The record reflects that Liechti repeatedly followed the children in his pickup while they were driving their four-wheelers.  This conduct created a dangerous situation that put the children in fear

---

4.     Liechti uses the Black's Law Dictionary's definition of malicious.  Black's Law Dictionary (1990) defines "malicious" as "having, or done with, wicked, evil or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will."  However, SDCL 22-1-2 provides the definitions for Title 22.  Therefore, we must apply the definition of malice found in SDCL 22-1-2(1)(a).

of great bodily injury as was demonstrated by the Schaefer children having to take evasive maneuvers through a wheat field. More significantly, Liechti stated that he should have used a shotgun to solve his problem with the children. Although this statement was initially made to the sheriff and state's attorney, the sheriff believed the threat was credible enough to inform the Schaefers and Scheller of the comment. Furthermore, they were aware that Liechti owned firearms. Thus, Liechti's conduct as well as the Schaefers', Scheller's, and the children's knowledge of Liechti's threatening statement was sufficient to establish a legitimate concern about the children's physical safety. Therefore, we affirm the trial court's finding that Liechti made credible threats that placed the petitioners in reasonable fear of great bodily injury.

[¶19.] Because Liechti's harassment amounted to a course of conduct, and because those actions were preformed maliciously and constituted credible threats, the trial court did not abuse its discretion in concluding that Liechti violated SDCL 22-19A-1(1) and (2). For the same reasons, we conclude that the trial court did not abuse its discretion in granting the protection order against stalking or personal injury.

### 3) Appellate Attorney's Fees

[¶20.] Schaefers and Scheller moved for appellate attorney's fees pursuant to SDCL 15-26A-87.3. "SDCL 15-26A-87.3 permits an award of appellate attorney fees if they are otherwise allowable and if they are accompanied by a verified, itemized statement of the legal services rendered." *In re* Writ of Certiorari as to Wrongful Payments of Attorney Fees Made by Brookings Sch. Dist. Sch. Bd., 2003 SD 101,

¶25, 668 NW2d 538, 547. Schaefers and Scheller contend that they may be entitled to attorney's fees after this Court considers the "property owned by each party, their relative income, the liquidity of the assets and whether either party unreasonably increased the time spent on the case." However, Schaefers' and Scheller's argument is an attempt to obtain attorney's fees under the balancing test used "[t]o determine whether attorney fees are proper in domestic relation cases." Dejong v. Dejong, 2003 SD 77, ¶30, 666 NW2d 464, 471. Because Schaefers and Scheller have failed to cite applicable authority entitling them to attorney's fees under the stalking statutes, their request is denied. *See* Hentz v. City of Spearfish, 2002 SD 74, ¶13, 648 NW2d 338, 342 (denying appellate attorney's fees for failure to provide statutory authority). Because Liechti has failed to prevail on his appeal, his motion is also denied.

[¶21.]    Affirmed.

[¶22.]    GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.