#23409-a-LOVRIEN, Circuit Judge

**2006 SD 70**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

JOHN LORD,                                          Plaintiff and Appellee

     v.

HY-VEE FOOD STORES,                      Defendant and Appellant

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WILLIAM J. SRSTKA, JR.
Judge

\* \* \* \*

TARA L. GLASFORD                          Attorney for
Canton, South Dakota                        plaintiff and appellee.

GARY P. THIMSEN and
MARY A. AKKERMAN of
Woods, Fuller, Shultz & Smith            Attorneys for
Sioux Falls, South Dakota                  defendant and appellant.

\* \* \* \*

ARGUED
OCTOBER 5, 2005

OPINION FILED 8/2/06

#23409

LOVRIEN, Circuit Judge

[¶1.]        John Robert Lord (Lord) brought suit against his former employer, Hy-Vee, Inc. d/b/a Hy-Vee Food and Drug #3 (Hy-Vee), claiming wrongful termination and intentional infliction of emotional distress.  A Minnehaha County jury found for Lord on the wrongful termination claim and awarded damages in the amount of $19,576.[1]  Hy-Vee appeals claiming the trial court did not properly instruct the jury on the shifting burdens of proof inherent in Hy-Vee's affirmative defense that Lord was discharged for lawful reasons.  Hy-Vee also claims that the jury did not have sufficient evidence and did not use the proper standard in determining Lord's damages.  We affirm.

FACTS

[¶2.]        In early 2000 Lord began working in Sioux Falls for Hy-Vee as a dairy stock person.  He was terminated from that position on November 14, 2000.  While it is undisputed that Lord was an at-will employee, he claimed he was wrongfully terminated because he reported to Hy-Vee that he had been sexually harassed by a female co-worker.  Lord claimed that in June 2000, while he was working in the frozen freezer section in the back of the store, fellow employee Delyn Hinkle (Hinkle) came out of the freezer and "bumped" into him and patted his "left butt cheek."  Brian Salter (Salter), a Hy-Vee supervisor, was with Lord at the time.  Apparently, Lord expected Salter to take appropriate action against Hinkle.  When nothing was done for two to three weeks Lord complained to store manager Brian Heinz (Heinz).   Nothing more occurred at that time.

---

1.    The jury found for Hy-Vee on the claim of intentional infliction of emotional distress.

[¶3.]        In late June or early July 2000 Lord was accused of touching a female co-worker, Glenis Hawke (Hawke), in an offensive manner by "swiping his hand across her buttocks."  Lord denied the incident.  Store director Paul Koll (Koll) investigated the accusation.  After discussing the matter with Hawke, they decided the best solution was to reprimand Lord for the inappropriate contact rather than terminate him.  Lord was also required to refrain from any further offensive contact with Hawke or other female employees.

[¶4.]        On November 11, 2000, Lord claimed he was approached by Hinkle.  She was angry after she learned of the accusations of sexual harassment Lord had made against her relating to the June freezer incident.  In fact, Hinkle claimed she had been sexually harassed by Lord.

[¶5.]        Hinkle, Lord, Brent Anderson (Anderson), the frozen dairy manager, and Jeff Elyra (Elyra), the shift supervisor, all met to discuss the allegations.  During the meeting Lord was instructed to submit to Koll a formal complaint by the following Monday concerning the June freezer incident involving Hinkle.  During this meeting Hinkle and Lord both claimed they had been sexually harassed in the workplace by the other.  The following Monday morning Koll called Lord to his office and fired him.  However, before deciding to terminate Lord, Hy-Vee claimed that store director Koll investigated the various allegations made by both Lord and Hinkle.  After examining the facts and interviewing other employees, Koll concluded that Hinkle's version was most likely true and Lord's was most likely untrue.  Hy-Vee maintained Lord was fired because Koll's investigation concluded

that Lord misrepresented the June freezer incident, engaged in improper conduct toward Hawke and possibly sexually harassed Hinkle.

[¶6.] As a result, Lord filed this action against Hy-Vee. A jury awarded him $19,576 for wrongful termination. Hy-Vee appeals that award claiming the jury was not properly instructed on the issue of retaliatory discharge. Hy-Vee also claims that the jury did not have sufficient evidence and did not use the proper standard in determining Lord's damages.

ANALYSIS AND DECISION

ISSUE ONE

[¶7.] **Did the trial court err in failing to instruct the jury on the shifting burdens of proof inherent in a retaliatory discharge case given Hy-Vee's affirmative defense that Lord was discharged for lawful reasons?**

[¶8.] Hy-Vee claims the trial court committed prejudicial error when it gave its proposed Jury Instruction No. 30 and refused to give Hy-Vee's requested Jury Instruction No. 23. We conclude that Hy-Vee did not preserve for appeal its objection to proposed Jury Instruction No. 30. We further conclude that requested Jury Instruction No. 23 is not a correct statement of the law and was properly refused by the trial court.[2]

[¶9.] This Court's standard of review concerning jury instructions is well settled. Behrens v. Wedmore, 2005 SD 79, ¶37, 698 NW2d 555, 570 (citing First Premier Bank v. Kolcraft Enterprises, Inc., 2004 SD 92, ¶40, 686 NW2d 430, 448). We construe jury instructions "as a whole to learn if they provide a full and correct statement of the law." *Id*.; Von Sternberg v. Caffee, 2005 SD 14, ¶6, 692 NW2d 549,

---

2. We note that under our rules the trial court "proposes" instructions and a party "requests" instructions. SDCL 15-6-51(b).

552; Kappenman v. Stroh, 2005 SD 96, ¶14, 704 NW2d 36, 40. "The party alleging error on appeal must show error affirmatively by the record, and not only must the error be demonstrated, but it must also be shown to be prejudicial error." Tovsland v. Reub, 2004 SD 93, ¶15, 686 NW2d 392, 398; Morrison v. Mineral Palace Ltd. Partnership, 1998 SD 33, ¶10, 576 NW2d 869, 872 ("Mere assertions of what a jury may have concluded are insufficient to show prejudice"). However, we have also held that a trial court's failure to give a requested instruction that correctly sets forth the law, in the absence of another instruction which sufficiently does the same, is prejudicial error. Bauman v. Auch, 539 NW2d 320, 323 (SD 1995).

[¶10.] Hy-Vee's claim of prejudicial error is premised on the court's proposed Jury Instruction No. 30 and Hy-Vee's requested Jury Instruction No. 23, which the trial court rejected. Requested Jury Instruction No. 23 provided:

> John Robert Lord was an at-will employee of Hy-Vee. This means his employment could have been terminated at any time and for any reason or for no reason by either Lord or Hy-Vee.
>
> Notwithstanding the fact that Lord was an at-will employee, Hy-Vee could not terminate Lord's employment *solely* because he allegedly made complaints about sexual harassment.
>
> If you find that Lord has established by a preponderance of the evidence that this employment was terminated solely because he complained about sexual harassment, the burden shifts to Hy-Vee to prove the termination occurred for reasons other than those alleged by Lord.
>
> If you find Lord was terminated for reasons other than his alleged complaints of sexual harassment, you must find in favor of Hy-Vee on the wrongful discharge claim.

#23409

Instead of giving Hy-Vee's requested instruction, the trial court gave Jury Instruction No. 30:

> John Robert Lord was an at-will employee of Hy-Vee. Hy-Vee could terminate his employment at any time for any reason except retaliation for making complaints about sexual harassment. If you find that Lord proved that Hy-Vee terminated his employment because he complained about sexual harassment, he may recover damages from the defendant.

[¶11.] On appeal, Hy-Vee argues that the trial court erred because the instructions given did not inform the jury of Hy-Vee's defense (nonretaliatory reasons for discharge). Hy-Vee points out that only Jury Instruction No. 23 mentioned that the burden shifted to Hy-Vee to articulate a legitimate reason for the termination. In Hy-Vee's view, only its requested Jury Instruction No. 23 properly informed the jury that Lord could be terminated if he was fired for reasons other than making the complaint of sexual harassment.

*A. Waiver*

[¶12.] SDCL 15-6-51(a) (Rule 51(a)) provides that: "[n]o party may claim error for the giving or failure to give an instruction unless that party objects stating distinctly the matter objected to and the grounds for the objection."[3] Here, Hy-Vee failed to make any objection to the trial court's Jury Instruction No. 30, which Hy-Vee now claims was inadequate.

[¶13.] Hy-Vee argues in its brief that it "objected to the trial court's refusal to instruct the jury on [its] affirmative defense;" *i.e.*, the giving of Jury Instruction No. 30 instead of requested Jury Instruction No. 23. In support of that assertion Hy-

---

3.   This rule has been amended effective July 1, 2006.

Vee cites volume two of the trial transcript, page forty-nine. However, the objection found there was insufficient to preserve error in this instance because, at that point, defense counsel was only arguing the motion for a directed verdict. Moreover, during that discussion counsel only mentioned the jury instructions as they regarded another theory of recovery involving intentional infliction of emotional distress. There was no reference to the instructions related to the retaliatory discharge claim now in issue. Thus, the cited reference does not preserve the jury instruction issue for appeal. The exact discussion bears repeating:

> Both parties having rested and by stipulation of counsel and consent of the court, I make the following motions at this time and also the same as though they had been made at the close of the plaintiff's case. And I move for a directed verdict on behalf of the defendant. First, I'd like to address what you just said, Judge. There is absolutely no evidence whatsoever of intentional infliction of emotional distress. The court, I think, correctly identifies the legal elements of that claim in its instruction 27 here, and the Supreme Court has outlined it in numerous cases, Dahl, D-a-h-l, v. Sittner, S-i-t-t-n-e-r,; Tibke, T-i-b-k-e, v. McDougall. And the court has said, and you've got in your instruction here, it has to be conduct exceeding all bounds of decency usually tolerated in a civilized society, not mere insults, indignities, et cetera. The most -- if you view all of the evidence in this case in the light most favorable to Mr. Lord -- which of course you have to do in considering this motion -- is that they disbelieved his complaints about Delyn Hinkle and fired him. That doesn't even approach the legal standard. So I'm going to object to any instructions in that regard and I move that the court direct a verdict against the plaintiff on that claim for intentional infliction of emotional distress.
>
> The second thing is the claim of retaliation. He has to prove under the law that the reason for his discharge was in retaliation for his having filed that claim. Our affirmative defense is that we had a legitimate nondiscriminatiory reason for having terminated him and that that -- and then he has to show that that articulated

> reason is a sham or a pretext. We have articulated a nondiscriminatory reason, ie, he sexually harassed and molested one Glenis Hawke and fabricated a story about another female employee, Delyn Hinkle. He has offered no evidence whatsoever to show that those reasons are a sham or pretextual; therefore, we prevail as a matter of law.
>
> So I ask the court to direct a verdict on the retaliatory and the intentional infliction claims.

This argument was insufficient to preserve any objection to Jury Instruction No. 30 relating to retaliatory discharge.

[¶14.]     After the trial court heard the foregoing argument, it denied the motion for directed verdict on the retaliatory discharge claim, and it then began settlement of the jury instructions. At this point, Lord's attorney, rather than Hy-Vee's counsel, brought up the shifting burden analysis stating: "Your Honor, if I may also say there -- I probably should go through this. It is my opinion we *might* need an instruction on what [Hy-Vee's counsel] has stated about the affirmative defense and then the pretextual." The trial court rejected Lord's counsel's suggestion stating:

> We're not going to do anything. All that does is just -- I disagree with the federal instructions on that, because you don't need it. Either he was fired for retaliation or he wasn't, and this pretext and all that kind of stuff I think is flat unnecessary.[4]

[¶15.]     Soon thereafter, Hy-Vee's counsel was asked if he had any objections to the court's instructions. Although Hy-Vee's counsel made a few objections, they all related to the intentional infliction of emotional distress claim. Hy-Vee's counsel stated:

---

4.     As is explained herein, the trial judge was correct in his analysis.

> Yes.  I'll be very brief.  We discussed it off the record.  In accord with my motion for directed verdict, I'm going to object to any instructions or reference in the instructions or verdict form to intentional infliction of emotional distress or damages for that count.  Specifically, I see the phrase.  So I'm objecting to that part of the instruction 22 that refers to intentional infliction of emotional distress and instructions 26, and 27, 28, 29 and object to the verdict form insofar as it refers to severe emotional distress, intentional infliction or damages to that.

> * * *

> We'll object to the court's failure to give our proposed or requested jury instruction number 18.

However, Hy-Vee's counsel never objected to Jury Instruction No. 30.  When the trial court specifically asked for any other objections, none were given.  Thereafter, the trial court overruled all requested instructions stating:  "All instructions not given are refused.  Instructions are settled."

[¶16.]       Therefore, it is clear from the record that Hy-Vee never objected to the trial court's proposed Jury Instruction No. 30.  As a result, the only error that may have been preserved for appeal was the trial court's refusal to give requested Jury Instruction No. 23.

> ### B.  It was unnecessary to instruct the jury on Hy-Vee's "affirmative defense" and the burden shifting analysis.

[¶17.]       Hy-Vee's requested Jury Instruction No. 23 attempted to incorporate the *McDonnell Douglas Corp. v. Green* burden shifting analysis.  411 US 792, 93 SCt 1817, 36 LEd2d 668 (1973).  At the outset, however, it must be noted that this instruction is an incorrect statement of the law.  Therefore, it did not preserve the burden shifting issue for appeal.

[¶18.]       Comparing requested Jury Instruction No. 23 to the *McDonnell Douglas* burden shifting analysis reveals that the trial court properly rejected the instruction as an incorrect statement of law.  Under the correct *McDonnell Douglas* burden shifting analysis, a plaintiff must first establish a "prima facie case by the preponderance of the evidence."[5]  Texas Dep't of Community Affairs v. Burdine, 450 US 248, 252-253, 101 SCt 1089, 1093, 67 LEd2d 207 (1981).  To establish a prima facie case of retaliatory discharge, a plaintiff must prove "(1) he engaged in Title VII protected activity (reported sexual harassment); (2) he subsequently suffered adverse employment action; and (3) [there was] a causal link between engaging in protected activity and the adverse employment action."  Leslie v. Hy-Vee Foods, Inc., 2004 SD 59, ¶11, 679 NW2d 785, 789.

[¶19.]       If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, nonretaliatory reason for the employment action.  *McDonnell Douglas*, 411 US at 802.  The defendant's burden at this stage, however, is only a burden of production, not persuasion.  *Burdine*, 450 US at 259-60.  If the defendant produces a legitimate, nonretaliatory reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason is merely a pretext for retaliation.  *Id*. at 252-53; *see also Leslie*, 2004 SD 59,

---

5.    We note the inconsistency of the phrases "prima facie case" and "preponderance of the evidence" appearing in the same burden of proof.  However, this is the United States Supreme Court's language.  Interestingly, it is only used by the federal courts in discussing summary judgment; *i.e.,* presumptions that arise from establishing a prima facie case of retaliation.  Even the federal courts that have attempted to instruct a jury on the *McDonnell Douglas* analysis do not instruct on prima facie case.

¶11, 670 NW2d at 789; Johnson v. Kreiser's, Inc., 433 NW2d 225, 227-28 (SD 1988) (utilizing the burden shifting analysis).

[¶20.] Here, requested Jury Instruction No. 23 required Lord to establish a prima facie case that his termination was "solely" caused by retaliation for filing the sexual harassment complaint. This is an incorrect statement of the law. As we noted in *Leslie*, a plaintiff need only establish a "causal link between engaging in protected activity and the adverse employment action." 2004 SD 59, ¶11, 679 NW2d at 789. In defining that causal link courts have not required a claimant to prove that the protected activity was the sole cause of the adverse employment action. Instead, they require a plaintiff to show that the sexual harassment complaint was "merely a contributing factor" in the decision to terminate his employment. Wiehoff v. GTE Directories Corp., 61 F3d 588, 598 (8th Cir 1995) (specifically stating that the plaintiff is not required to "show that the retaliatory motive was the sole reason for the employment action, but 'merely a contributing factor'"). Thus, there can be no preserved error because Hy-Vee's requested Instruction No. 23 was an incorrect statement of law.

[¶21.] More fundamentally, however, Jury Instruction No. 23 should not have been given because most jurisdictions have concluded, for a variety of reasons, that a jury instruction setting forth the *McDonnell Douglas* burden shifting analysis is unnecessary.[6] Those courts reason that the terminology associated with the

---

6. In Sanghvi v. City of Claremont, 328 F3d 532 (9th Cir 2003), the Ninth Circuit Court of Appeals concluded that it was error to instruct the jury on the technical elements of the *McDonnell Douglas* burden shifting analysis because such an instruction had "significant potential to confuse juries," was "designed to allocate burdens and promote the orderly presentation of

evidence," and "evades the ultimate question of discrimination," which should be the focus of the fact finders. *Id.* at 541-42. In reaching its conclusion, the Ninth Circuit Court of Appeals surveyed the cases on this subject:

> Some decisions criticize any use of the *McDonnell Douglas* formulation in instructing the jury, emphasizing that the only question that should go to the jury is the ultimate question of discrimination; other circuits condemn the use of legalistic language and the complexities of burden shifting without rejecting the *McDonnell Douglas* framework outright. *See* Cabrera v. Jakabovitz*,* 24 F3d 372, 380-82 (2nd Cir 1994) (holding that, although a jury instruction that included the phrase "*prima facie* case" and referred to "defendant's 'burden' of produc[tion]" "created a distinct risk of confusing the jury," in certain instances it would be appropriate to instruct the jury on the elements of a prima facie case); Watson v. Southeastern Pa. Transp. Auth., 207 F3d 207, 221-222 (3rd Cir 2000) (holding that, although it is proper "to instruct the jury that it may consider whether the factual predicates necessary to establish the prima facie case have been shown," it is error to instruct the jury on the *McDonnell Douglas* burden shifting scheme), *cert. denied,* 531 US 1147, 121 SCt 1086, 148 LEd2d 961 (2001); Mullen v. Princess Anne Vol. Fire Co.*,* 853 F2d 1130, 1137 (4th Cir 1988) (noting that the "shifting burdens of production of *Burdine . . .* are beyond the function and expertise of the jury" and are "overly complex"); Walther v. Lone Star Gas Co.*,* 952 F2d 119, 127 (5th Cir 1992) ("Instructing the jury on the elements of a prima facie case, presumptions, and the shifting burden of proof is unnecessary and confusing. Instead, the court should instruct the jury to consider the ultimate question of whether defendant terminated plaintiff because of his age"); Ryther v. KARE 11*,* 108 F3d 832, 849-50 (8th Cir 1997) (en banc) (Loken, J., in Part II.A. of the dissent, which a majority of the court joined) (holding that "the jury need only decide the ultimate issue of intentional discrimination," and usually need not make findings on the prima facie case or whether the defendant's explanation is pretextual); Dudley v. Wal-Mart Stores, Inc.*,* 166 F3d 1317, 1322 (11th Cir 1999) ("We stress that it is unnecessary and inappropriate to instruct the jury on the *McDonnell Douglas* analysis").

*Id.* at 539-40. In a footnote, the court continued and summarized other cases from the First, Seventh, and Tenth Circuits:

> The First, Seventh, and Tenth Circuits also appear to disapprove of the wholesale adoption of the *McDonnell Douglas* formulation in jury instructions. *See* Loeb v. Textron, Inc.*,* 600 F2d 1003, 1016-18 (1st Cir 1979) (explaining that, while the phrase "prima facie case" and other "legal jargon" need not be read to the jury, whether jury instructions should include "the four elements of the *McDonnell Douglas*-type prima facie case (properly tailored to the circumstances) and that the employer's reason is a pre-text" will depend upon the evidence presented); *disapproved of on other grounds by* Trans World Airlines, Inc. v. Thurston*,* 469 US 111, 126 n19, 105 SCt 613, 624, 83 LEd2d 523 (1985); Gehring v. Case Corp.*,* 43 F3d 340, 343 (7th Cir 1994) ("Once the judge finds that the plaintiff has made the minimum necessary demonstration (the 'prima facie case') and that the defendant has produced an age-neutral explanation, the burden-shifting apparatus has served its purpose, and the only remaining question-the *only* question the jury need answer-is whether the plaintiff is a victim of intentional discrimination"); Messina v. Kroblin Transp. Sys., Inc.*,* 903 F2d 1306, 1308 (10th Cir 1990) ("The *McDonnell Douglas* inferences . . . are of little relevance to the jury."); *but see* Rowlett v. Anheuser-Busch, Inc.*,* 832 F2d 194, 200 (1st Cir 1987)("[T]he district court was correct in using the [*McDonnell Douglas*] framework in the instructions to the jury" because "[i]t is a straightforward way of explaining how to consider whether there is intentional discrimination"); *abrogated on other grounds by* Iacobucci v. Boulter*,* 193 F3d 14, 27 (1st Cir 1999); Lynch v. Belden & Co.*,* Inc., 882 F2d 262, 269 (7th Cir 1989)("[I]t was proper for the district court to instruct the jury as to the *McDonnell Douglas/Burdine* formula for evaluating indirect evidence . . . . [Such an instruction] accurately informed the jury of the parties' burdens . . ." (footnote omitted)); Faulkner v. Super Valu Stores, Inc., 3 F3d 1419, 1425 & n3 (10th Cir 1993) (holding that there was no error in a jury instruction that incorporated the entire *McDonnell Douglas* formulation because it set forth the proper allocation of proof and directed the jury that age must be the determinative factor in the failure to hire).

*McDonnell Douglas* analysis, including "prima facie case," "preponderance of the evidence," "burden of production," and "pretext," "create a distinct risk of confusing the jury." *Dudley*, 166 F3d at 1322; *see also* Lipchitz v. Raytheon Co., 434 Mass 493, 508, 751 NE2d 360, 373 (2001).

> [T]he distinction between burden of persuasion and burden of production is not familiar to jurors, and they may easily be misled by hearing the word 'burden' (though referring to a burden of production) used with reference to a defendant in an explanation of that part of the charge that concerns a plaintiff's burden of persuasion.

*Dudley*, 166 F3d at 1322. We conclude that there is a significant risk that the jury may be confused and misled by the use of these legal concepts in a *McDonnell Douglas* burden shifting instruction.[7]

[¶22.]     Instead of instructing the jury regarding the burden shifting analysis, the United States Supreme Court and the Eighth Circuit Court of Appeals have indicated that the *McDonnell Douglas* analysis "is merely an analytical tool that 'serves to bring the litigants and the court expeditiously and fairly'" to the ultimate question, which "in any retaliation case is whether the employer's adverse action against the employee was motivated by retaliatory intent." Wallace v. DTG

---

*Id.* at 540 n6.

7.     For example, requested Jury Instruction No. 23 states that if Lord established by a "preponderance of the evidence" that his employment was terminated solely because of his sexual harassment complaint, "the burden shifts to Hy-Vee to *prove*" that Lord was terminated for nonretaliatory reasons. Under this instruction, there is a great risk that the jury would assume that Hy-Vee had the burden of proving a nonretaliatory reason for termination by a "preponderance of the evidence" (a burden of persuasion), rather than merely having a "burden of production."

Operations, Inc., 442 F3d 1112, 1119 (8th Cir 2006) (quoting *Burdine*, 450 US at 253). The *McDonnell Douglas* "'analytical framework' was established in the context of summary judgment 'to give judges a method of organizing evidence and assigning the burdens of production and persuasion in [a] discrimination case.'" *Lipchitz*, 434 Mass at 508, 751 NE2d at 372-73 (quoting *Loeb*, 600 F2d at 1016). Thus, the analysis would only be applicable in a summary judgment or directed verdict situation for the trial court to utilize to determine if the issue should be given to the jury. Kanida v. Gulf Coast Medical Personnel LP, 363 F3d 568, 575 (5th Cir 2004) ("The *McDonnell Douglas* formula . . . is applicable only in a directed verdict or summary judgment situation.")(quoting Powell v. Rockwell Int'l Corp., 788 F2d 279, 285 (5th Cir 1986)). But, the analysis "is not the proper vehicle for evaluating a case that has been fully tried on the merits." *Id.* In other words, "the analysis 'was not written as a prospective jury charge,' and is ill-suited to the task." *Lipchitz*, 434 Mass at 508, 751 NE2d at 372-73; s*ee also* Grebin v. Sioux Falls Indep. Sch. Dist. No. 49-5, 779 F2d 18, 20 (8th Cir 1985); *abrogated on other grounds by* Foster v. Univ. of Arkansas, 938 F2d 111 (8th Cir 1991) ("*McDonnell-Douglas* was not a jury case and its ritual is not well suited as a detailed instruction to the jury").

[¶23.]     The United States Supreme Court and Eighth Circuit Court of Appeals also explained that the *McDonnell Douglas* burden shifting analysis and presumption disappears when the case is submitted to the jury: "at [the] final stage of the burden shifting analysis, the plaintiff's burden 'merges with the ultimate burden of persuading the jury that [the plaintiff] has been the victim of intentional

[retaliation].'" *Wallace*, 442 F3d at 1120 (quoting *Burdine*, 450 US at 256). This merging burden analysis appears to have been the basis for the trial court's decision in this case. The merging burden theory is also required under state law. *See* SDCL 19-11-1 (Rule 301). That rule of evidence provides that when a presumption (the presumption of retaliation established by Lord's prima facie case) requires the opposing party to produce evidence to rebut, and the rebutting party produces substantial, credible evidence making the presumption disappear, the jury shall not be instructed on the presumptions.[8] Thus, under the *McDonnell Douglas* framework, the presumption of retaliation that arises once the plaintiff establishes a prima facie case disappears when the defendant satisfies its burden of articulating a legitimate, nonretaliatory reason for the employment action. At this point, "the *McDonnell Douglas* framework – with its presumptions and burdens – is no longer relevant." St. Mary's Honor Center v. Hicks, 509 US 502, 510, 113 SCt 2742, 2749, 125 LEd2d 407 (1993). The only question that the jury needs to be instructed on is the ultimate question of whether the plaintiff was terminated in retaliation for filing a complaint. *See Walther*, 952 F2d at 127.

---

8.      SDCL 19-11-1 provides:

> In all civil actions and proceedings, unless otherwise provided for by statute or by chapters 19-9 to 19-18, inclusive, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast. When substantial, credible evidence has been introduced to rebut the presumption, it shall disappear from the action or proceeding, and the jury shall not be instructed thereon.

[¶24.] For these reasons, we conclude that the trial court was correct in instructing the jury (Jury Instruction No. 30) that Lord had the burden of proving "that Hy-Vee terminated his employment because he complained about sexual harassment." The presumption of retaliation had disappeared following the submission of conflicting evidence on this point, and therefore, this instruction correctly required Lord to prove a retaliatory motive for the termination. The trial court correctly rejected requested Jury Instruction No. 23 because it was an incorrect statement of the law and because a jury should not be instructed to conduct a burden shifting analysis in reaching its verdict.

ISSUE TWO

[¶25.] **Did the jury use the proper standard, supported by sufficient evidence, in determining Lord's damages?**

[¶26.] Hy-Vee preserved this issue for appeal by making a motion for directed verdict, judgment notwithstanding the verdict and new trial. We review the trial court's ruling on these motions by the abuse of discretion standard. Gilkyson v. Wheelchair Express, Inc., 1998 SD 45, ¶7, 579 NW2d 1, 3 (citing Bland v. Davison County, 1997 SD 92, ¶26, 566 NW2d 452, 460 (additional citations omitted)).

[¶27.] Hy-Vee argues that there was insufficient evidence presented at trial on the issue of damages and that the jury used an improper standard in making its determination. Specifically, Hy-Vee argues that the jury award was incorrectly determined because: (1) Lord was fired from his subsequent employer, Wal-Mart, for sexual harassment; and (2) there was no rational basis for the jury's determination of damages.

[¶28.] Following his employment at Hy-Vee, Lord was employed at Wal-Mart from November 2000 until March 2001. At trial, Hy-Vee repeatedly questioned Lord as to the reason why his employment was terminated. Hy-Vee's contention was that Lord was released from employment at Wal-Mart for sexual harassment. Lord's testimony was that he had "suffered a hernia." Lord further testified that there was a misunderstanding related to his employment. Lord also claimed that he had come to the aid of a female customer who was being harassed by a former Wal-Mart employee, that he was accused of sexual harassment for this incident and this was partially the reason why he was fired.

[¶29.] In the alternative, Hy-Vee argues that any award of damages should be limited to compensate Lord for his term of unemployment following termination at Hy-Vee. Under this rationale, Lord would be compensated $720 for the two week time period in November 2000; following his termination at Hy-Vee, up until he found employment at Wal-Mart.

[¶30.] During final argument to the jury, Lord's counsel offered the jury a formula by which it could determine damages in Lord's favor. Based on this formula, Lord's counsel asked for damages in the amount of $19,576. The formula was calculated as such: If Lord's hourly rate at a subsequent job was less than at Hy-Vee, Lord asked for the difference. If Lord's hourly rate at a subsequent job was equal to or more than at Hy-Vee, he asked for nothing. If Lord was unemployed for any time period after his employment at Hy-Vee, he asked for his hourly rate while at Hy-Vee.

[¶31.]     An award of damages is a factual issue to be determined by the jury. Roth v. Farner-Bocken Co., 2003 SD 80, ¶26, 667 NW2d 651, 662. Damages must be reasonable and must be proved with reasonable certainty. *Id.*; Kephart v. Backhaus, 312 NW2d 473, 474 (SD 1981). Proof of damages requires a reasonable relationship between the method used to calculate damages and the amount claimed. *See* Swenson v. Chevron Chem. Co., 89 SD 497, 234 NW2d 38, 43 (1975). Inclusively, "[i]n applying this rule, we refrain from dictating any specific formula for calculating damages. Instead, we apply a 'simple reasonable certainty test concerning the proof needed to establish a right to recover damages.'" McKie v. Huntley, 2000 SD 160, ¶18, 620 NW2d 599, 603 (quoting Drier v. Perfection, Inc., 259 NW2d 496, 506 (SD 1977)). The reasonable certainty standard requires there to be proof of a rational basis for measuring loss, without allowing a jury to speculate. *Id.* (quoting Kressly v. Theberge, 79 SD 386, 112 NW2d 232, 233 (1961)).

[¶32.]     The trial court directly addressed the question of speculative damages in Jury Instructions No. 4 and No. 5:

> 4.     Any damages awarded must be fair and reasonable under the circumstances. You must not base your verdict on *speculation, guesswork or conjecture*. An employee who was damaged as a result of termination of his employment has a duty to take steps to minimize the loss by making a reasonable effort to find comparable employment. I have given you different measures of damages for the various theories alleged by plaintiff. These measures of damages overlap. You must not award damages to plaintiff for the same injury more than one time. If you award damages for an alleged injury or loss under one theory, do not award damages for that injury or loss under another theory. (emphasis added).
>
> 5.     Damages for retaliation are the amount of agreed compensation for a reasonable period that plaintiff would

> have received but for the wrongful discharge. You must deduct any compensation actually earned or that with reasonable efforts could have been earned, by the plaintiff during the reasonable period referred to in the first sentence of this paragraph.

This Court has noted that the difficulty in computing damages should not be confused with the requirement of proving damages as an essential element for recovery. *McKie*, 2000 SD 160, ¶20, 620 NW2d at 604 (quoting Seattle Western Indus., Inc. v. David A. Mowat Co., 110 Wash2d 1, 750 P2d 245, 249 (1988)). After providing sufficient evidence of damages, the claimant must only produce the best evidence available to allow a jury a reasonable basis for calculating the loss. *Id.*

[¶33.] The jury was the trier of fact. Evidence and testimony were offered for the jury's consideration concerning Lord's employment at Wal-Mart. Based on this evidence, the jury determined Lord's testimony to be credible. The jury obviously determined that the facts did not support Hy-Vee's contention that he was fired from Wal-Mart for sexual harassment.

[¶34.] In addition, Lord presented a reasonable method for the jury to determine damages and a rational basis for the jury to determine the amount of the award. Given the fact that the amount proposed by Lord and the amount awarded by the jury were the same, it is reasonable to conclude that the jury calculated damages in the manner proposed by Lord. The evidence in the record is sufficient to establish a rational basis for the jury to determine and measure Lord's damages. Accordingly, the trial court did not abuse its discretion by denying Hy-Vee's motion for directed verdict, judgment notwithstanding the verdict and new trial on the issue of damages.

APPELLATE ATTORNEY FEES

[¶35.]    Lord has submitted a motion for appellate attorney fees in the amount of $1,908. The motion is accompanied by an itemized and verified statement of the costs incurred pursuant to SDCL 15-26A-87.3. An award of appellate attorney fees is permissible if the attorney fees are otherwise allowable and if they are accompanied by a verified, itemized statement of the legal services rendered. *Id*; Schaefer ex rel. S.S. v. Liechti, 2006 SD 19, ¶20, 711 NW2d 257, 264; Stratmeyer v. Engberg, 2002 SD 91, ¶29, 649 NW2d 921, 928. "We have interpreted this to mean that appellate attorney fees may be granted 'only where such fees are permissible at the trial level.'" Grynberg Exploration Corp. v. Puckett, 2004 SD 77, ¶33, 682 NW2d 317, 324 (quoting Hentz v. City of Spearfish, Dept. of Pub. Works, Office of Planning & Zoning, 2002 SD 74, ¶13, 648 NW2d 338, 342). Attorney fees can only be awarded at the trial level if provided by contract or if authorized by statute. Matter of Estate of O'Keefe, 1998 SD 92, ¶17, 583 NW2d 138, 142. Lord fails to cite any authority to support his claim that the court can award attorney fees in this matter. Accordingly, Lord's motion is denied.

[¶36.]    The judgment of the trial court is affirmed.

[¶37.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶38.]    LOVRIEN, Circuit Judge for SABERS, Justice, disqualified.