NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0472n.06
Filed: July 6, 2006

No. 05-3455

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GARY L. KNAPP, et al.,                        )
                                              )
    Plaintiffs-Appellants,               )
                                              )
v.                                            )     On Appeal from the United States
                                              )     District Court for the Southern
CITY OF COLUMBUS, et al.,                     )     District of Ohio
                                              )
    Defendants-Appellees.                )
                                              )
                                              )
                                              )
                                              )
                                              )
                                              )
                                              )
                                              )
                                              )

BEFORE:    BOGGS, Chief Judge; MOORE, and COOK, Circuit Judges.

    PER CURIAM. Appellants Gary L. Knapp, Brian Willison, and William Fitzpatrick appeal the district court's order granting summary judgment to the Defendants in this civil action under the Americans with Disabilities Act (ADA). Defendants are the City of Columbus and various of its officials. The district court held that the Plaintiffs were not disabled within the meaning of the Act. We affirm.

**I**

Knapp v. City of Columbus (No. 05-3455)

The facts of this case are not in dispute. We consider them in the light most favorable to the Plaintiffs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A. Gary L. Knapp

Gary L. Knapp was hired by the City of Columbus in 1980 as a firefighter and is currently a Fire Lieutenant. Knapp graduated, finishing in the bottom ten percent of his high-school class. After high school he went into the military, earned an Associate's Degree in Fire Science from Columbus State Community College, and became a certified fire instructor. He has subsequently earned and maintained certification as an emergency medical technician (EMT). Knapp asked for and received the same type of testing accommodations during his enrollment at Columbus State Community College that he seeks from Defendants in this suit. In 1994 or 1995, he was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD, sometimes referred to as Attention Deficit Disorder or ADD).

A 1995 correspondence between two of Knapp's doctors states that Knapp has "significant ADHD symptoms," which have "an adverse impact upon day-to-day functioning," and that he has "significant problems" reading and studying. The letter also states that Knapp "does not generally favor [the] use of medication." A "Neuropsychological Evaluation" prepared for this litigation by Dr. Mary K. Hill states that Knapp's IQ is above average, in the 108–116 range. Tests characterized Knapp's memory as "moderately impaired" to "superior" and his reading comprehension as "high average." The evaluation summarily concludes that, to pass the City's promotion test, Knapp needs testing accommodations:

> Mr. Knapp has the cognitive ability to successfully complete his employer's
> promotion test; however, his ADHD symptoms interfere with his being able to

perform at his level of ability in his employer's normal testing environment. Instead, because of the ADHD, he will need accommodations to overcome the barriers imposed by the distracting and crowded test conditions.

Knapp stated in his deposition that he does not read for pleasure and that he has read only two books. He also admits that he takes the drug Ritalin to treat his symptoms. This treatment, he says, "gets [him] through the day." The difference between when he treats his symptoms with Ritalin and when he does not is like "night and day." However, Knapp maintains that "ADHD affects [him] daily."

In December 1998, Knapp requested various accommodations from the Columbus Civil Service Commission (CCSC) in anticipation of the Fire Captain promotion examination. He provided documentation of his ADHD and requested an alternate, quieter test site, more time to complete the test, and a verbal explication of the test's directions. The CCSC denied his request and all of his subsequent appeals. Knapp failed the 1999 examination and filed complaints with both the Ohio Civil Rights Commission (OCRC) and the United States Equal Employment Opportunity Commission (EEOC), accusing the CCSC of violating his statutory rights under the ADA by failing to accommodate his disability. The EEOC, in a letter, granted Knapp the right to sue. *See* 42 U.S.C. § 12117.

Knapp repeated this process for the 2001 and 2003 examinations. Each time he applied for and was denied his requested accommodations and failed the exam. His subsequent appeals to the CCSC were all denied.

B.  Brian Willison

Brian Willison was hired by the City of Columbus in 1982 and is currently a firefighter. He was diagnosed with ADHD and post-traumatic stress disorder in 1994. Willison's performance in high school was slightly below average.

Willison has been treated by several doctors, including Frank Kobe, Larry L. Pfahler, and David C. Weil. A 1995 letter sent by Dr. Kobe states that Willison's ADHD has "had a pervasive effect upon his day-to-day functioning," but that "he was able to maintain [his] job performance," and that the prescribed Ritalin was helping. Another letter by Dr. Kobe states that Willison "experiences significant distractability, restlessness, and impulsivity that result in impairments," but also notes that maintaining attention is not a problem and that Willison can focus well enough to do his job. Dr. Pfahler indicates that Willison has ADHD and is helped "to a great extent" with Ritalin and that, according to Willison himself, he is doing "incredibly well" with his treatment. Dr. Pfahler does not believe that Willison is disabled. Dr. Weil believes that Ritalin has been an effective treatment for Willison's ADHD and that his "symptoms were never, never a problem for him in that" he could "fulfill family and work obligations." Dr. Weil does not believe that ADHD affects Willison's ability to learn. The only concrete example of Willison's attention problems discernable from the evidence supplied by his doctors is that he once forgot to pick up the baby-sitter, even though his son was in the car with him.

Willison was also evaluated by Dr. Hill for the trial. She concluded that his intelligence was in the "high average" range. His memory functioning ranged from "superior" to "impaired," with the worst tests reflecting performance above 3% of the population. His reading comprehension was rated as "high average." The evaluation concluded, as did Knapp's, that:

> Willison has the cognitive ability to successfully complete his employer's
> promotion test; however, his ADHD symptoms interfere with his being able to
> perform at his level of ability in his employer's normal testing environment.
> Instead, because of the ADHD, he will need accommodations to overcome the
> barriers imposed by the distracting and crowded test conditions.

Willison stated that he takes Ritalin daily and that it controls his ADHD symptoms "[f]airly well." While taking Ritalin, he can organize and concentrate and is never hyperactive. He stated that he has a problem sitting still for more than half an hour but admits that he has maintained his basic EMT certification, which occasionally requires one week of classroom instruction and a written exam.

In December 1998, Willison requested testing accommodations for the 1999 Fire Lieutenant's promotion examination. He provided documentation of his ADHD and requested more time for the exam, visual aids, a quieter testing environment, and "someone to possibly assist with oral questions." The CCSC denied his request and subsequent appeals. Willison then failed the 1999 examination. He again requested accommodations for the 2001 exam. The CCSC denied his request and Willison failed the 2001 exam. He appealed the CCSC's decision but did not receive any reply to his administrative appeal.

### C. William Fitzpatrick

William Fitzpatrick was hired by the City of Columbus in 1988 as a firefighter and is currently a Fire Lieutenant. Fitzpatrick graduated from high school near the middle of his class. He has never had trouble keeping a job, but he is a slow reader and prefers magazines to books. He is an EMT and has renewed that certification every two years through testing. Fitzpatrick

was diagnosed with ADHD in 1994 after three of his children were diagnosed with ADHD as well.

Dr. Hill's evaluation of Fitzpatrick revealed that his intelligence is in the "high average" range. Dr. Daniel J. Martin has treated Fitzpatrick for ADHD with Ritalin and this treatment has been successful. Notes from Dr. Martin state that Fitzpatrick is "doing well but [that his] medication wears off after a few hours." Fitzpatrick only treats his symptoms when he feels it is necessary; when his family and job duties do not require it, he forgoes taking any Ritalin. The single example of ADHD affecting his life is that he once "tore apart" his kitchen to remodel it before discussing it with his wife.

In 1994, Fitzpatrick requested testing accommodations to compensate for his ADHD on the 1995 Fire Lieutenant's examination. He was afforded extra time and was allowed to take the exam alone to minimize any distraction from other test-takers. He passed the 1995 exam and was promoted to his current position. In December 1998, Fitzpatrick requested accommodations for the 1999 Fire Captain's promotion examination. Four days before the exam, Fitzpatrick contacted the CCSC to determine the status of his accommodation request and they informed him that no request could be located. Fitzpatrick then failed the 1999 exam, and his attempts at administrative appeal were unsuccessful. In December 2000, he applied to the CCSC for testing accommodations before he was to sit again for the Fire Captain promotion examination. The CCSC denied his request and he failed the 2001 examination.

On March 23, 2001, Knapp filed in the Southern District of Ohio the first of the three complaints consolidated in this case. *See Knapp v. City of Columbus*, No. 01-255 (S.D. Ohio

Apr. 26, 2004) (consolidating case with No. 04-203) and *Knapp v. City of Columbus*, No. 04-203 (S.D. Ohio Apr. 23, 2004) (consolidating case with No. 02-1221). With regard to the 1999 examination, the Plaintiffs alleged, *inter alia*, a violation of the ADA, 42 U.S.C. §§ 12101 et seq., violation of the Rehabilitation Act, 29 U.S.C. §§ 794 et seq., and violation of Ohio's Handicap Discrimination Law, Ohio Rev. Code § 4112. *See Knapp v. City of Columbus*, 93 F. App'x 718, 719 (6th Cir. 2004). Two more complaints were filed, subsequent to the 2001 and 2003 examinations respectively; both alleged further violations of the ADA, the Rehabilitation Act, and Ohio's discrimination law. The district court dismissed the first complaint on the pleadings, pursuant to Fed. R. Civ. P. 12(c), and the Plaintiffs appealed to this court. *See id*. We reversed and remanded after determining that the complaint did state a cause of action under Title I of the ADA. *Id.* at 720.

On October 26, 2004 Defendants moved for summary judgment. They argued that Plaintiffs had failed to make a prima facie case of discrimination under the ADA because they could not show that they were disabled within the meaning of the ADA. They also argued that Plaintiffs' Rehabilitation Act and Ohio state-law discrimination claims must fail for the same reason. On February 16, 2005, the district court agreed with Defendants and granted their motion for summary judgment on all claims. *Knapp v. City of Columbus*, No. 02-1221 (S.D. Ohio). Plaintiffs timely appealed only their discrimination claims. *See* Fed. R. App. P. 4(a).

**II**

We review a grant of summary judgment de novo, *Williams v. Ford Motor Co.*, 187 F.3d 533, 537–38 (6th Cir. 1999), under the familiar standard of Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

We resolve Plaintiff's ADA and Rehabilitation Act claims using a single, unified analysis. "Although the Rehabilitation Act predates the Americans with Disabilities Act, analyses of claims made under the two acts run roughly parallel." *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002) (citation omitted); *Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir. 1997). Similarly, our federal analysis can parallel that of Plaintiff's claims under *Erie* and Ohio law. *See Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206–07 (Ohio 1998). The Supreme Court of Ohio has held that "[t]he federal Americans with Disabilities Act ('ADA') is similar to the Ohio handicap discrimination law" and that many of their definitions and standards are identical. *Ibid.* For this reason, Ohio courts look to cases interpreting the ADA "for guidance in . . . interpretation of [the] *Ohio* law." *Ibid.* (emphasis added).

The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (1990). Accordingly, to establish a violation under the ADA, a plaintiff must prove: "(1) he has a disability; (2) that he is 'otherwise qualified' for the job; and (3) that defendants either refused to make a reasonable accommodation for his disability or made an adverse employment decision regarding him solely because of his disability." *Smith v.*

*Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997) (citing *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996)).  Of course, a plaintiff must introduce evidence supporting each element of the prima facie case if the action is to survive summary judgment.  *See Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001);  *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 842 (6th Cir.1996).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Plaintiffs assert that ADHD substantially limits the major life activity of learning.

The Supreme Court has identified two sources of guidance when interpreting the ADA's definition of "disability":  regulations issued by the Department of Health, Education, and Welfare (HEW) pursuant to the Rehabilitation Act of 1973 and the EEOC regulations interpreting the ADA.  *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193–94 (2002).  We assume the regulations to be valid where neither party objects to their validity.  *Id.* at 194 (assuming without deciding that the regulations are valid).  Under these regulations, ADHD qualifies as a "physical or mental impairment," 45 C.F.R. § 84.3(j)(2)(i)(A), and learning qualifies as a major life activity, 29 C.F.R. § 1630.2(i), 45 C.F.R. § 84.3(j)(2)(ii) (providing that major life activities include, but are not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").

To determine whether Plaintiffs demonstrated that ADHD substantially limits their ability to learn, we consider "whether the claimant is unable to perform the variety of tasks

central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Toyota Motor*, 534 U.S. at 200–01. "The impairment's impact must also be permanent or long term." *Id.* at 198. The requirements of the ADA are so demanding, that even if these critically important tasks are occasionally disrupted, a jury could still find the absence of a disability under the ADA. *Id.* at 202 (holding that plaintiffs needing occasional help dressing and driving does not "amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual task disability as a matter of law").

Finally, "whether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). In making this inquiry, we keep in mind that "the ADA's coverage is restricted to only those whose impairments are not mitigated by corrective measures." *Id.* at 487. This results in a "functional" definition of disability, where a disability is properly measured *with the aid* of any corrective measure. *Id.* at 488. Thus, for example, the plaintiffs in *Sutton* were not disabled because "with corrective measures, their visual acuity is 20/20." *Ibid. See also Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598–99 (6th Cir. 2002) (impairment "must be viewed in its medicated—and thus substantially controlled—state"). When an ADA plaintiff can fully compensate for an impairment through medication, personal practice, or an alteration of behavior, a disability under the Act does not exist. There is "no principled basis for distinguishing between measures undertaken with artificial aids, like medications and devices, and measures undertaken, whether consciously or not, with the body's own systems." *Albertson's*, 527 U.S. at 565–66.

## III

After conducting an individualized analysis of the evidence presented by each plaintiff, the district court dismissed each claim because none of the Plaintiffs had created a genuine issue of material fact as to whether he was disabled within the meaning of the ADA. *See Knapp v. City of Columbus*, No. 02-1221, slip op. at 20–29 (S.D. Ohio Feb. 16, 2005). We agree. None of the Plaintiffs has introduced evidence creating a triable issue of fact on the question of whether they are substantially limited in the major life activity of learning.

We find that the rule in *Sutton v. United Air Lines*, coupled with the Plaintiffs' own admissions, eliminates any need to consider whether the Plaintiffs' academic performances in high school, prior to their medical treatment with Ritalin, could present evidence of a limitation in learning. 527 U.S. at 483 (1999). For plaintiff Knapp, the admission that the difference between his treated and untreated states is like "night and day" forecloses the need for a jury to consider whether his poor performance in high school, before treatment, can now constitute a substantial limitation in learning. Similarly, plaintiff Willison's admissions that he can fulfill his family and work obligations while taking Ritalin preclude a jury from considering the single piece of probative evidence that his learning is limited *to any extent*: the fact that he once forgot to pick up the baby-sitter. Likewise, plaintiff Fitzpatrick's admission that he takes Ritalin on an optional and discretionary basis according to his need to control his ADHD symptoms prevents him from making a prima facie case. Plaintiffs have not shown that Ritalin is anything but an effective treatment for their disorder.

We also find that the neuropsychological evaluations prepared by Dr. Hill and the numerous statements by the Plaintiffs that ADHD affects them in their daily lives do not create any issue of material fact. "An expert opinion submitted in the context of a summary judgment motion must be more than a conclusory assertion about ultimate legal issues." *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 663–64 (6th Cir. 2005) (internal quotations and citations omitted).

## IV

We therefore conclude that Plaintiffs have failed to establish that ADHD substantially limits their ability to learn. Accordingly, the judgment of the district court is **AFFIRMED**.