#23701-a-SLZ

**2006 SD 86**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN RE: REASONABLE TESTING
ACCOMMODATIONS OF
TERRY LEE LAFLEUR

* * * *

APPEAL FROM THE BOARD OF BAR
EXAMINERS' FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER

* * * *

DOMINIC M. SMITH
South Dakota Advocacy Services
Sioux Falls, South Dakota     Attorney for applicant
            and appellant.


JAMES D. LEACH
Board of Bar Examiners
Rapid City, South Dakota

and

LAWRENCE E. LONG
Attorney General

ROBERT MAYER
Deputy Attorney General
Pierre, South Dakota       Attorneys for Board of
            Bar Examiners and appellee.

* * * *

ARGUED APRIL 25, 2006

OPINION FILED **09/20/06**

#23701

ZINTER, Justice

[¶1.]         Terry Lee LaFleur failed to pass the South Dakota bar examination on three occasions.  On his last attempt, he failed even though the South Dakota Board of Bar Examiners granted his request for accommodations under the Americans with Disabilities Act (ADA).  Those accommodations included time and one half to take the exam and a private, distraction free room.  Prior to a fourth attempt, LaFleur requested double time and other accommodations, but the Board only granted the accommodations provided on the third attempt.  LaFleur appeals.  We affirm.

## Facts and Procedural History

[¶2.]         LaFleur attended Thomas M. Cooley School of Law.  The school is located in Lansing, Michigan and is accredited by the American Bar Association.  While in law school, LaFleur experienced difficulties maintaining acceptable grades and was placed on academic probation.  He underwent psychological testing by Dr. Robert J. Fabiano.  Dr. Fabiano diagnosed Attention Deficit Hyperactivity Disorder (ADHD) (Inattentive Type) and Major Depressive Disorder (Single Episode, Mild).  Thereafter, LaFleur received special accommodations in law school, including additional time to take examinations and the use of a private testing room.  With these accommodations, LaFleur met the requirements for graduation.

[¶3.]         After graduation, LaFleur applied to take the July 2002 South Dakota bar examination.  In his application, LaFleur requested accommodations for his ADHD.  He requested time and a half, use of a private and distraction free room,

rest periods, and a tape recorder. The Board Secretary denied LaFleur's request. LaFleur failed that exam.

[¶4.] LaFleur next applied for the February 2003 examination. This time, LaFleur did not request any accommodations. He again failed.

[¶5.] A week later, LaFleur applied for the July 2003 examination. On this third application, LaFleur requested accommodations of time and a half, use of a private and distraction free room, rest periods, and a tape recorder. The Board Secretary again denied this request. LaFleur, however, appealed that decision to the full Board, and an administrative hearing was scheduled. The day before the hearing, the Board granted LaFleur's requested accommodations. Although the Board granted LaFleur's requested accommodations, he withdrew from the July 2003 examination.

[¶6.] LaFleur then applied for the February 2004 examination and requested the same accommodations, including time and a half. He took the February 2004 examination with his requested accommodations but failed by four points.

[¶7.] LaFleur subsequently petitioned this Court for permission to take the exam for a fourth time.[1] After we granted his petition, LaFleur again requested accommodations. The Board Secretary asked LaFleur to update his medical records supporting his request. LaFleur complied and sought an updated psychological evaluation at the University of South Dakota Counseling Center. Mr. Michael

---

1. Under SDCL 16-16-11, an applicant who fails the bar examination three times may only retake the exam with permission from this Court.

Fendt, a university doctoral student and licensed psychologist in Minnesota, performed the evaluation under the authority and supervision of Dr. Matt Stricherz, Ph.D., a licensed psychologist. The evaluation indicated that LaFleur had a reading disorder and Attention Deficit Disorder (ADD) (Combined Type).

[¶8.] Based on the updated psychological evaluation, LaFleur applied for the July 2005 examination and requested new accommodations. This time he requested: double time on all subtests; testing over a four day period rather than two days; testing to be conducted in the mornings into the early afternoon; a private, distraction free room; use of colored pens and a ruler; and use of scratch paper.[2] In support of this request, LaFleur submitted a form documenting his disability. LaFleur's submission indicated that he had "difficulty following written and oral directions, disorganization, inattention, distractibility, and hyperfocusing adversely impact[ing] verbal processing under time tested conditions." LaFleur also submitted Mr. Fendt's psychological evaluation report, which indicated that LaFleur had "difficulty sustaining attention in academic tasks, conversations with people, and problems staying focused at work." The report further indicated that LaFleur had "difficulties following through on instructions at home, work, and at school, and failing to complete his responsibilities in these environments" and that

---

2. The evaluation also recommended LaFleur's request: use of written formats for all test materials, to write answers to the MBE and later transferring them to the "bubble sheet," and an option to use audio recordings. LaFleur asks for reversal of the Board and a granting of all accommodations recommended in this evaluation, or in the alternative, an order modifying the Board's decision granting the accommodations listed in ¶8, *supra*.

LaFleur "would easily be distracted by external and internal stimuli, and . . . [had] great difficulty organizing tasks."

[¶9.] Although the Board Secretary denied LaFleur's new requests for accommodations, including double time, she granted time and a half and a private room. LaFleur again requested an administrative hearing before the Board. Following the hearing, the Board issued findings of fact and conclusions of law only allowing the previously provided accommodations. LaFleur appeals arguing that the Board violated the ADA in failing to provide his requested accommodations.

## Standard of Review

[¶10.] "[U]nder SDCL 16-16-16, this Court is the final arbiter of the decisions of the Board of Bar Examiners, and as such, we can accept or reject the Board's conclusion." Application of Widdison, 539 NW2d 671, 675 (SD 1995) (citing Application of Shemonsky, 379 NW2d 316, 318 (SD 1985)). We generally apply the "de novo standard of review to both questions of law and fact in all bar admission cases." *Id.* (rejecting admission to State Bar for failure to demonstrate good moral behavior). *See also In re* Ogilvie, 2005 SD 65, 698 NW2d 78 (lacking the required good moral character); *In re* Yanni, 2005 SD 59, 697 NW2d 394 (reversing Board's refusal to admit applicant without examination). However, this case does not involve these types of questions relating to an applicant's eligibility for admission to the Bar. This case involves more academic and technical questions regarding testing matters for an examination that the Board administers. In analogous cases where "the accommodation involves similar academic decisions, 'courts [have] show[n] great respect for the [academic officials'] professional judgment.'" *See*

Mershon v. St. Louis Univ., 442 F3d 1069, 1078 (8thCir 2006) (quoting Amir v. St. Louis Univ., 184 F3d 1017, 1028 (8thCir 1999) (quoting Regents of Univ. of Mich. v. Ewing, 474 US 214, 225, 106 SCt 507, 513, 88 LEd2d 523, 532 (1985))). We agree that in such matters, we should give "due weight" to the Board's administrative decisions and will not substitute our own notion of exam policy. *See* Gill v. Columbia 93 School Dist., 217 F3d 1027, 1037 (8thCir 2000) (citing Board of Educ. v. Rowley, 458 US 176, 206, 102 SCt 3034, 3051, 73 LEd2d 690, 712 (1982)).

## Decision

[¶11.]     The ADA is a federal civil rights act that is "designed to provide comprehensive protection for disabled individuals against discrimination based on their disabilities." Theriault v. Flynn, 162 F3d 46, 47-48 (1stCir 1998). This comprehensive act is designed "to eliminate disability discrimination on three fronts: employment (Title I, 42 USC §§ 12111-12117); public services offered by public agencies (Title II, 42 USC §§ 12131-12165); and public services and accommodations offered by private entities (Title III, 42 USC 12161-12189)." Martin v. Taft, 222 FSupp2d 940, 966 (SDOhio 2002). LaFleur alleges a violation under Title II, which provides in part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such agency.

42 USC § 12132. "The protection afforded [under Title II of] the ADA is characterized as a guarantee of 'meaningful access' to government benefits and programs, which broadly means that public entities must take reasonable steps to

ensure that individuals with disabilities can take advantage of such public undertakings." *Theriault*, 162 F3d at 48 (citations omitted).

[¶12.]    LaFleur contends that the Board violated Title II by failing to approve his requested accommodations and, in particular, his request for double time to take the exam. In order to prevail on this claim, LaFleur "must show (1) that [he] is disabled, (2) that [his] requests for accommodations [were] reasonable, and (3) that those requests have been denied." D'Amico v. New York State Bd. of Law Exam'rs, 813 FSupp 217, 221 (WDNY 1993). *See also* Cox v. Alabama State Bar, 330 FSupp2d 1265, 1267 (MDAla 2004). In the analogous Title III setting, the Eighth Circuit further explained that under the reasonable accommodation requirement: a plaintiff must show "that the defendant failed to make reasonable modifications *that would accommodate the plaintiff's disability* without fundamentally altering the nature of the public accommodation." *Amir*, 184 F3d at 1027 (emphasis added) (citations omitted). The Board has conceded that it is a public entity, that LaFleur is disabled, and that his requested accommodations were denied. Therefore, the question is whether LaFleur proved that the Board failed to make reasonable accommodations that would accommodate his disability.

[¶13.]    LaFleur first claims that in light of Mr. Fendt's evaluation, LaFleur's requested accommodations were reasonable, and therefore, the Board was required to implement those accommodations unless the Board proved that the accommodations would fundamentally alter the nature of the bar exam.[3] In

---

3.    LaFleur argues that, in deciding this issue, we must apply a modified burden shifting analysis similar to the *McDonnell Douglas* analysis

(continued . . . )

support of his argument, LaFleur relies on a reasonable-modifications regulation found in 28 CFR § 35.130(b)(7), which provides:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate conclusively that making the modifications would fundamentally alter the nature of the service, program, or activity.

Under this regulation, LaFleur contends that once he made a prima facie showing of a need for accommodations through Mr. Fendt, the Board was required to demonstrate that LaFleur's requested accommodation would fundamentally alter the nature of the exam. Because the Board made no showing that LaFleur's requested accommodations would fundamentally alter the nature of the bar exam, he contends that he must prevail.

---

(. . . continued)

utilized in Title VII employment discrimination cases. *See* Peebles v. Potter, 354 F3d 761, 766 (8thCir 2004) (stating that "a modified burden shifting analysis" is utilized "because a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive. The *McDonnell Douglas* line of cases, however, is aimed at fleshing out this 'elusive factual question of intentional discrimination.'") (citations omitted).

In any event, we believe that this type of burden shifting analysis is only applicable in motions for summary judgment and directed verdicts. *See* Lord v. Hy-Vee, 2006 SD 70, ¶22, 720 NW2d 443, 452; Kanida v. Gulf Coast Medical Personnel LP, 363 F3d 568, 575 (5thCir 2004) ("'The *McDonnell Douglas* formula . . . is applicable only in a directed verdict or summary judgment situation.'") (quoting Powell v. Rockwell Int'l Corp., 788 F2d 279, 285 (5thCir 1986). In this case, we are not presented with an appeal involving summary judgment or directed verdict. Rather, the Board made its decision after a full hearing on the merits of the reasonableness claim. Therefore, the

(continued . . . )

[¶14.]		However, because the Board never relied upon the fundamental alteration defense, LaFleur misapprehends the issue that is actually presented in this case. In analyzing this regulation, the Supreme Court recognized that the "fundamental-alteration" language is only one part of the reasonable-modification requirement. Olmstead v. L.C. *ex rel.* Zimring, 527 US 581, 604, 119 SCt 2176, 2189, 144 LEd2d 540, 560 (1999). The Supreme Court acknowledged that in addition to the fundamental alteration defense, a public agency may also satisfy the reasonable accommodation requirement if the public entity actually provides effective, alternative accommodations. *See Id.* at 605-606.[4] Consequently, the reasonable modification requirement not only permits a public entity to reject a proposed accommodation if it would fundamentally alter the entity's services or programs, but also if the public entity's alternative accommodation would accommodate the individual's disability.

---

(. . . continued)

>	burden shifting analysis is inapplicable. The issue is simply whether
>	LaFleur was denied reasonable accommodations.

4.	In the context of alternative placements for persons with mental disabilities, the Supreme Court stated:

>	If . . . the State were to demonstrate that it had a
>	comprehensive, effectively working plan for placing qualified
>	persons with mental disabilities in less restrictive settings, and
>	a waiting list that moved at a reasonable pace not controlled by
>	the State's endeavors to keep its institutions fully populated, the
>	reasonable-modifications standard would be met.

*Id.* at 605-606.

[¶15.] In this case, rather than raising the fundamental alteration defense, the Board relied solely on evidence that the alternative accommodations it offered were reasonable and adequate to accommodate LaFleur's disability. Therefore, we must determine whether LaFleur satisfied his ultimate burden of proving that those alternatives did not provide reasonable accommodations for his disability.

[¶16.] LaFleur's proof was primarily based on the updated psychological evaluation performed by Mr. Fendt. Mr. Fendt obtained a bachelor's degree in psychology in 1971, a master's degree in counseling in 1996, and was a doctoral student at the time of the evaluation. He recommended that LaFleur be given double time on all tests; a private, distraction free room for testing; segmented testing over a four day period and other accommodations. Mr. Fendt testified that double time was the national standard for people with disabilities similar to LaFleur's. When pressed further, however, Mr. Fendt disclosed that this was the standard for entrance examinations such as the GRE, GMAT, SAT, and the ACT. Mr. Fendt conceded that he did not know the national standard for bar examinations, and he did not contact anyone at the National Conference of Bar Examiners to determine that standard.

[¶17.] In contrast, the Board relied upon the testimony of Dr. John D. Ranseen, a licensed psychologist. Dr. Ranseen is an associate professor of psychiatry at the University of Kentucky Medical Center. Dr. Ranseen also consults for sixteen different state boards of bar examiners,[5] has made numerous

---

5. Dr. Ranseen was a consultant for the board of bar examiners in:
   California, Colorado, Florida, Kentucky, Louisiana, Maryland,
   (continued . . . )

invited presentations on the ADA,[6] and has published several articles on ADA accommodations.[7] Dr. Ranseen was also familiar with LaFleur's case as he had reviewed LaFleur's file on two prior occasions. Based on his review of LaFleur's case, including the updated evaluation performed by Mr. Fendt, Dr. Ranseen opined that double time was unnecessary because time and a half and a distraction free room would reasonably accommodate LaFleur's disability. Dr. Ranseen reported:

> The updated evaluation seemingly indicates that Mr. LaFleur still encounters some relative difficulty in terms of his general academic processing speed such that *I recommend that he be*

_____

(. . . continued)
Minnesota, Missouri, New York, North Carolina, Oklahoma, Pennsylvania, South Carolina, South Dakota, Texas, and Virginia.

6. Dr. Ranseen's invited presentations on the ADA included:
   1) "Learning Disability Among College Students: A Neuropsychologist's Perspective." Counseling and Testing Center, University of Kentucky. March 1993.
   2) "Testing Under the ADA: What You Should Know About the Definition, Diagnosis, and Accommodation of Disabilities." American Bar Association: Section on Legal Education and Admissions to the Bar. Chicago, Illinois. August 1995.
   3) "Testing Under the ADA: Issues with Adult Attention Deficit Disorder." National Conference of Bar Examiners. Chicago, Illinois. April 1996.
   4) "Testing Under the ADA: Evaluating Disability Documentation." National Conference of Bar Examiners. Chicago, Illinois. April 2000.
   5) ADA Case Studies. National Conference of Bar Examiners. New Orleans, Louisiana. March 2004.

7. Dr. Ranseen's published articles relating to the ADA included:
   1) Ranseen, J.D., *Lawyers With ADHD: The Special Test Accommodation Controversy*, Professional Psychology (1998).
   2) Ranseen, J.D., *Reviewing ADHD Accommodation Requests An Update*, The Bar Examiner (2000).
   3) Ranseen, J.D. & Park, G.S., *Test Accommodations for Post-Secondary Students: The Quandary of ADA's Disability Definition*, Psychology, Public Policy & Law (2005).

> *provided 50% extra time.* I think that it is plausible that he is a distractible individual secondary to weakness in his ability to sustain attention. Thus, *I recommend that he again be provided a separate (or distraction-reduced) testing area.* However, based on my numerous stated concerns and his past history of accommodation (50% extra time, separate room), *I see no reason why additional accommodations should be offered* (100% extra time, additional days).

Dr. Ranseen explained that: 1) LaFleur had received similar accommodations (time and a half) in the past; 2) since then, he had been treated for his attention deficit hyperactivity disorder; 3) treatment usually helps the ability to focus; and 4) although it was not clear that the treatment greatly improved LaFleur's ability to focus, there was also no clear indication that his ability to focus had significantly decreased.

[¶18.]    After evaluating the testimony and qualifications of these experts, the Board adopted Dr. Ranseen's opinion over that of Mr. Fendt. As the Board noted, Dr. Ranseen was more qualified, knowledgeable, and experienced than Mr. Fendt or Dr. Stricherz in determining ADA accommodations for bar examinations. We have often stated that a quasi-judicial fact finder is vested with discretion in choosing the expert that it believes concerning a person's impairment. Tischler v. United Parcel Service, 1996 SD 98, ¶46, 552 NW2d 597, 605 (stating that in workers' compensation cases, "[i]t is within the [agency's] discretion to disregard one expert's impairment rating and accept another."). We see no difference here. Therefore, the Board did not err in finding that LaFleur failed to satisfy his burden of proving that he was denied reasonable modifications that would accommodate his disability.

[¶19.]    Affirmed.

#23701

[¶20.]    GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶21.]    MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.