# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS
OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR
CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN
UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A
COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG
WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO
THE ACTION.

RENDERED: FEBRUARY 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0391-OA

KIMBERLY PHELPS                                                      PETITIONER

V.                              IN SUPREME COURT

KENTUCKY OFFICE OF BAR                                          RESPONDENT
ADMISSIONS

## OPINION AND ORDER

Kimberly Phelps initiated an original action in this Court after her requests for testing accommodations for the July 2024 Kentucky Bar Examination were denied by the Kentucky Board of Bar Examiners ("KBBE"), through the Non-Standard Testing Accommodations Committee ("NST Committee").

Phelps asserts that the KBBE's decision to deny her accommodations was not based on substantial facts and was not consistent with the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 121010. After a thorough review, we concur with the findings of the KBBE.

## I. BACKGROUND

Phelps began having issues with college examinations at the University of Kentucky in 2016. She consulted with Dr. Matthew Nelter and was tested for Attention Deficit/Hyperactivity Disorder ("ADHD"). Phelps had not previously

been diagnosed with ADHD. The first ADHD checklist that Phelps completed measured childhood ADHD symptoms, and the second checklist tested for current symptoms of ADHD. Dr. Neltner determined from her Quotient test that Phelps struggled with inattention and impulsivity. A minimum score of 46 completed is predictive of childhood ADHD—Phelps scored a 49. On the second checklist, Phelps scored high on the inattentive, hyperactive, and impulsive factors. As a result, Dr. Neltner determined Phelps needed medication to help treat her ADHD symptoms.

In 2017, Phelps began receiving accommodations from the University of Kentucky for her ADHD. In a 2019 letter directed to Phelps, the University of Kentucky stated that, in accordance with the ADA Amendments Act of 2008 and the University Accommodation Procedure, the following accommodations would be made for her: 50% extra time on exams and quizzes; a private, low distraction room for all exams and quizzes; and availability of paper copies of all exams and quizzes. Phelps later successfully completed the Law School Admission Test ("LSAT") without requesting any accommodations.

After completing her undergraduate degree at the University of Kentucky, Phelps began law school at the Salmon P. Chase College of Law at Northern Kentucky University ("NKU"). While at NKU, Phelps received the following accommodations: 50% extra time on her exams and a private testing room. She sought treatment from Dr. Samreen Munir to address her ADHD symptoms, but Phelps switched doctors in 2022, continuing her ADHD treatment with Dr. Kenneth Lin. Dr. Lin affirmed Phelps' ADHD diagnosis

2

based on her previous medical reports and charts, his own examination of Phelps, the ADHD diagnosis criteria, and standard questionaries. In Dr. Lin's opinion, Phelps' ADHD diagnosis negatively affected her ability to take exams, and he agreed with the academic accommodations she had received.

In 2023, Phelps was approved by the National Conference of Bar Examiners ("NCBE") for the following accommodations during the Multistate Professional Responsibility Examination ("MPRE"): up to 15 minutes of stop-the-clock break time, one small snack, and ear plugs. She received a passing score on the MPRE. That same year, Phelps applied to sit for the July 2023 Kentucky Bar Exam. Phelps submitted an examination accommodation request to the NST Committee based on her ADHD diagnosis and celiac disease, which requested 50% additional time on all portions of the exam, a 15-minute stop-the-clock break per testing session, a private room, and access to water and a snack.

In addition to the NST Committee, Phelps' application was reviewed by Dr. Timothy Allen, MD. Dr. Allen is a medical consultant and expert used by the Kentucky Office of Bar Admissions ("KYOBA") who is board certified by the American Board of Psychiatry and Neurology. Additionally, he is board certified in forensic psychiatry, general psychiatry, and brain injury medicine. He is a distinguished fellow of the American Psychiatric Association and has been a practitioner for over 20 years. After reviewing Phelps' request, including the medical records she provided, Dr. Allen recommended that Phelps receive a semi-private testing room to accommodate her celiac disease, but did not find

3

that her cognitive status required additional time for the exam. The NST Committee granted Phelps a semi-private testing room as requested for her celiac disease, but all other accommodations were denied. Phelps appealed the NST Committee's decision to the KBBE which denied her appeal. She did not seek further relief from this Court. Phelps attempted the July 2023 exam without ADHD accommodations and failed the exam.

Phelps registered to sit for the February 2024 exam and requested the same accommodations. This time her accommodations request was reviewed by Dr. Michael Gordon, Ph.D. Dr. Gordon is an expert for the KYOBA and a professor of psychiatry and behavioral sciences at SUNY Upstate Medical University. He has been inducted into the Children and Adults with Attention-Deficit/Hyperactivity Disorder ("CHADD") Hall of Fame and received the Keith Conners' Award for Scientific Contribution to the Field of ADHD.

After reviewing Phelps' application for accommodations for the February 2024 exam, Dr. Gordon determined that her application was "weak on external evidence," and did not provide objective childhood evidence of a history of ADHD. Dr. Gordon observed that Phelps was able to perform well enough on the college and law school admissions exams without accommodations to be admitted into college and law school. He took note of Phelps' own narrative describing how she reported doing very well in school and had been placed in "gifted" classes beginning in kindergarten. Phelps also reported she excelled in her position as a pharmacy assistant. Dr. Gordon stated that a person who met the criteria for ADHD "would find the demand of such tasks to be

4

overwhelming." Based on his expertise, Dr. Gordon did not believe Phelps' demonstrated ADHD symptoms that "caused substantial impairment over the course of her life" and recommended denying her accommodations request. After reviewing Phelps' application and Dr. Gordon's findings, the NST Committee granted Phelps' request for a semi-private room to accommodate her celiac disease but denied her other requests based on her ADHD diagnosis. She appealed the decision to the KBBE, which affirmed the decision. Phelps did not seek relief from this Court, took the February 2024 exam, and failed it a second time.

Phelps applied to sit for the July 2024 exam and made the following accommodation requests: a table to herself, 50% extra time on the essay portion of the exam, 50% extra time on the multiple-choice portion of the exam, and extra breaks. For a second time, the NST Committee utilized the help of Dr. Allen to review Phelps' request for accommodations. In his report, Dr. Allen opined[1]

> In the application, [Phelps] stated that she was diagnosed with ADHD in 2016 and reported symptoms of "being quirky" since childhood. Although her medications including Adderall XR and Dextrostat were helpful, Ms. Phelps requested additional

[1] Dr. Allen was provided the following documents for his report: Phelps' File Summary, Request for Test Accommodations (Reapplication—July 2024), Attention Deficit/Hyperactivity Disorder Verification, Physical Disability Verification, Medical Documentation/Evaluations, Accommodations Histories & Approval Letters, Transcripts—Undergraduate & Law School, LSAC Academic Summary Report, Personal Narrative, Phelps' "Supplemental Narrative Addressing Issues with Lack of Accommodations for the July 2023 Bar Exam," Recommendation of Dr. Timothy Allen regarding Applicant's July 2023 accommodations application, and Recommendation of Dr. Michael Gordon regarding the Applicant's February 2024 accommodations application.

accommodation because they completely ameliorate her symptoms of ADHD.  She also stated that the extended time was necessary to alleviate anxiety caused by the examination.  During previous bar attempts, this anxiety impacted her concentration and prevented her from understanding the exam questions.  Because she took this examination twice in the past

and received similar scores on the multiple-choice component, she asserted that it was "quite clear that a simple, reasonable, accommodation of 50% additional time [was] obviously needed."  Breaks were requested to help her ability to clear her mind and "increase dopamine release so that [she] could complete the exam with better focus."

For her history of celiac disease, she asserted that separate testing room was necessary to prevent exposure to gluten.  If she were to sit next to another individual wearing a fragrance, which commonly contains gluten, she could experience a migraine or severe ataxia.

Her accommodations on the July 2023 and February 2024 included a semi-private testing room.  On the MPRE, she received off-the-clock breaks, a private room, and access to food and water.  In college and law school, she was permitted 50% extra time and a private room.

The remaining application included previous materials from her bar attempts in July of 2023 and February of 2024.  There were no additional medical records or other documentation provided.  I personally reviewed her application for her examination in July of 2023.  Although records indicated that she was diagnosed with ADHD based on results from self-report questionnaires and an objective Quotient ADHD test, the Quotient ADHD assessment was completed in 2016 and there was not updated evidence of cognitive impairment.  Furthermore, there was no information regarding her current level of functioning as it pertained to test taking, for example, with objective evaluation of executive functioning, processing speed, reading comprehension, or reading fluency.  In addition, the application did not include objective

evidence that she experienced symptoms prior to age 12, as required to meet DSM 5 criteria for ADHD. Therefore, I did not recommend extra time or off-the-clock breaks on the examination. Regarding her history of celiac disease, I recommended a semi-private room that was free of any gluten exposure.

Dr. Michael Gordon, PhD, reviewed her application in February of 2024 and denied her request for additional time and breaks for ADHD due to insufficient evidence

that it caused significant impairment in her academic functioning. Her application indicated that she graduated college, achieved an average score on the LSAT, and was accepted to law school without accommodation.

On July 1, 2024, Phelps received a letter from the NST Committee stating her request for a semi-private testing room free of gluten allergies would be provided to her, but all other requested accommodations for the July 2024 exam were denied. Phelps appealed the decision of the NST Committee to the KBBE, arguing she had a disability under the ADA because she had a mental impairment through her ADHD; that her ADHD limited her ability to concentrate and read, which qualifies as a major life activity under the ADA; that her current treating physician, Dr. Lin, confirmed that her life activities were limited; and that her past testing accommodations support her position. The KBBA affirmed the decision of the NST Committee, explaining that the NST Committee committed no errors in denying Phelps' accommodation request and it was not persuaded by the additional documentation she provided. Thus, Phelps declined to sit for the July 2024 exam and filed this original action.

## II. ANALYSIS

This Court is constitutionally tasked with the authority to "govern admission to the bar" and possesses plenary power over all bar admissions. Ky. Const. § 116; *Poole v. Browne,* 694 S.W.3d 334, 337 (Ky. 2024). Supreme Court Rule ("SCR") 2.000 created the Office of Bar Admissions, encompassing the Board of Bar Examiners and the Character and Fitness Committee. Those entities are authorized to implement the procedures for admission to the Kentucky Bar and evaluate the character and fitness of bar applicants as a prerequisite to admission pursuant to the rules set forth in SCR 2.000 through 2.540. 694 S.W.3d at 338. SCR 2.082 provides for eligibility for testing accommodations:

> (1) The bar examination shall be administered by the Bar Examining authority to all eligible applicants in a manner that is fair and equitable.
>
> (2) An applicant with a disability who is eligible to take the bar examination, may file an application for reasonable non-standard test accommodations. For the purpose of this rule disability shall be defined as a physical or mental impairment that: (a) substantially limits one or more major life activities, (b) substantially limits the ability of an applicant to demonstrate, under standard test conditions, the skills, abilities and knowledge tested on the Kentucky bar examination, (c) this applicant has a record of having, or (d) this applicant is regarded as having.
>
> . . .
>
> (5) The Bar Examining authority shall make reasonable modification in the manner in which the examination is administered to an applicant with a disability whose application for non-standard test accommodations has been approved by the Board,

8

> while maintaining the security and integrity of the examination.

This Court has not previously considered a case where a Kentucky Bar applicant requested accommodations for ADHD and the NST Committee denied the request. In *Poole*, a Kentucky Bar applicant was awarded accommodations for the Kentucky Bar Exam held in July 2021, February 2022, July 2022, and July 2023. 694 S.W.3d at 337. The applicant never appealed his awarded accommodations until he failed to pass the exam on his fifth attempt and was notified, he would not be allowed to sit for the exam for a sixth time pursuant to SCR 2.080(4). *Id.* In the case at hand, Phelps has properly appealed the NST Committee's decision denying her accommodations request. Thus, we will consider what other jurisdictions have implemented when reviewing the denial of accommodations for the Bar Exam or other professional examinations.

Phelps argues that the KBBE's decision to deny her accommodations request was not consistent with the ADA. "The ADA is a federal civil rights act that is designed to provide comprehensive protection for disabled individuals against discrimination based on their disabilities." *In re Reasonable Testing Accommodations of LaFleur*, 722 N.W.2d 559, 562 (S.D. 2006) (internal quotes omitted). The protections afforded in the ADA extend to applicants sitting for state bar exams. *In re Murphy*, 283 A.3d 1167, 1176 (Del. 2022) (citing 42 U.S.C.A. § 12132). "The ADA is not designed to allow individuals to advance to professional positions through a back door. Rather, it is aimed at rebuilding the threshold of a profession's front door so that capable people with unrelated

disabilities are not barred by that threshold alone from entering the front door." *Price v. Nat'l Bd. Of Med. Examiners*, 966 F.Supp. 419, 421-22 (S.D.W. Va. 1997) (quoting Jaime Katz & Janine Valles, *The Americans with Disabilities Act and Professional Licensing*, 17 Mental & Physical Disability L. Rep. 556, 561 (Sept./Oct. 1993) (internal quotes omitted)). Under the ADA, "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Knapp v. City of Columbus*, 192 Fed.Appx. 323, 328 (6th Cir. 2006).

"An impairment substantially limits a person's major life activity when the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people in the general population." *Price*, 966 F.Supp. at 422. Phelps asserts that her ADHD diagnosis substantially limits major life activities such as reading, thinking, concentrating, and learning—all of which are implicated in the completion of examinations and have been recognized as "major" life activities by the Sixth Circuit and ADA. *See Gonzales v. Nat'l Bd. Of Med. Examiners*, 225 F.3d 620, 626 (6th Cir. 2000); 42 U.S.C. § 12102(2)(A).

In determining whether an individual has demonstrated their ADHD diagnosis substantially limits their ability to learn, the Sixth Circuit has considered "whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to

10

perform the tasks associated with her specific job." *Knapp*, 192 Fed.Appx. at 328; *Toyota Motor Mfg., Kentucky Inc. v. Williams*, 534 U.S. 184, 193-94 (2002). The impact of an individual's impairment "must also be permanent or long term." *Williams*, 534 U.S. at 200-01. "The requirements of the ADA are so demanding, that even if these critically important tasks are occasionally disrupted, a jury could still find the absence of a disability under the ADA." *Knapp*, 192 Fed.Appx. at 329; *Williams*, 534 U.S. at 202 (holding that plaintiffs needing occasional help dressing and driving themselves did not constitute "severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual task disability as a matter of law.").

Additionally, determining if a person has a disability under the ADA is a personalized inquiry, and ADA coverage does not extend to those individuals whose impairments are properly mitigated by corrective measurements. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 487 (1999). Accordingly, an individual's disability must be measured with the aid of any corrective measures. *Id.* at 488. In *Sutton*, the plaintiffs were not considered disabled because their visual ability measured 20/20 with the aid of corrective measures. *Id.*; *see also Cotter v. Aijlon Servs., Inc.*, 287 F.3d 593, 598-99 (6th Cir. 2002) (discussing that an individual's impairment "must be viewed in its medicated—and thus substantially controlled—state").

> When an ADA plaintiff can fully compensate for an
> impairment through medication, personal practice, or
> an alteration of behavior, a disability under the Act

11

does not exist. There is no principled basis for distinguishing between measures undertaken with artificial aids, like medications and devices, and measures undertaken, whether consciously or not, with the body's own systems.

*Knapp*, 192 Fed.Appx. at 329 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565-66 (1999) (internal quotations omitted)). In *Price*, the plaintiffs were medical school students diagnosed with ADHD and seeking accommodations of additional time and private rooms for the United States Medical Licensing Examination ("USMLE"). 966 F.Supp. at 422. Plaintiffs were denied accommodations by the Board on the basis that their "impairments did not significantly restrict one or more of their major life activities." *Id.* On appeal, the plaintiffs argued their requested accommodations were mandated by the ADA. *Id.* The Southern District of West Virginia considered the plaintiffs' individual claims by examining their academic history, examination history, ADHD diagnosis history, and all previous accommodations the student received. *Id.* at 423-24. The court noted that a learning disability does not always qualify as a disability under the ADA—the individual must have a physical or mental impairment and the impairment must substantially limit a major life activity. *Id.* at 426.

After considering factors included in each plaintiff's claim—college GPA, placement in "gifted" classes as children, MCAT exam accommodations, and evidence from treating physicians in support of the plaintiffs' claim—the court determined the plaintiffs had significant histories of academic achievement as represented by their standardized testing scores and lack of evidence that they

12

did not learn as well as the average person. *Id.* at 422-24, 428. Thus, the plaintiffs' ADHD diagnoses did not substantially limit their ability to learn when compared to most other people. *Id.* at 428. The court additionally noted that there was a legitimate interest in protecting the integrity of the USMLE and granting accommodations under the ADA to individuals who do not have disabilities "would [only] allow persons to advance to professional positions through the proverbial back door." *Id.* at 422.

In the current case, Phelps has not demonstrated that she is unable to read or concentrate any less than the average person in the general population. Like the students from *Price*, she too was placed in gifted classes as a child and presented no substantial evidence of childhood ADHD. Phelps did not provide the KBBE with any updated evidence of impairment after receiving treatment, as she only provided documentation corroborating her 2016 diagnosis. This was noted in Dr. Allen's review of Phelps' July 2023 and July 2024 NST accommodations request when he stated that Phelps did not provide an "objective evaluation documenting her current levels of attention, or measurements of her executive function, processing speed, reading comprehension, or reading fluency." In coming to this conclusion, Dr. Allen reviewed the medical records Phelps provided, which included reports from, Dr. Munir that she had performed adequately in college without any problems since establishing medication to treat her ADHD. *Sutton,* 527 U.S. at 483, 487. After further reviewing the accommodations, Phelps received at the University of Kentucky and NKU Chase College of Law, transcripts, and GPAs Dr. Allen

13

did not believe the documents submitted by Phelps provided "any information to aid in an assessment of her current levels of functioning as it pertains to the potential impact of ADHD on her standardized test-taking ability." *See Healy v. Nat'l Bd. Of Osteopathic Med. Examiners, Inc.*, 870 F.Supp.2d 607, 620 (S.D. Ind. 2012) (considering plaintiff's good academic record without accommodations and plaintiff's psychologist's testimony that plaintiff had average reading processing skills, the court concluded the plaintiff did not present any substantial limitation in reading compared to the average person in the general population).

Moreover, Dr. Gordon reached the same conclusions as Dr. Allen in his review of Phelps' February 2024 NST accommodations request. Dr. Gordon noted Phelps unsuccessfully explained how she was considered disabled "in her ability to take high stakes" examinations when she consistently performed well enough without accommodations to gain admission to college and law school. Dr. Gordon also commented on Phelps' failure to submit any documentation of a "differential diagnosis that would rule out non-ADHD explanations" for her issues, which could be "factors such as those related to her level of intellectual/academic functions..., history of mood problems, or test anxiety."

Phelps' February 2024 NST accommodations request stated that anxiety negatively affected her concentration and impacted her from sufficiently understanding exam questions. Additionally, she argued receiving almost the same score on the multiple-choice portion of the exam the past two times she

14

took it is evidence of her need for an accommodation of 50% additional time to take the exam. Dr. Gordon reviewed this application and Phelps' complaints, concluding that a law school's curriculum and the bar exam are "rigorous and far beyond the capabilities of the general population," and struggling in those situations is not evidence of a disability. Dr. Gordon did not recommend extra time or breaks on the exam unless Phelps provided additional documentation.

As to her alleged anxiety, Phelps performed adequately on both the ACT and LSAT without accommodations to receive admission into college and law school. Phelps argues that the testing policies surrounding the LSAT prohibited examiners from making "extraneous noise" and rationalizes that as the reason she performed well enough to gain admittance into law school. However, the bar exam also prohibits extraneous noise[2] and she was ultimately granted a semi-private testing room to accommodate her celiac disease. For the July 2023 and February 2024 exams Phelps was given a totally private testing room as there were no other celiac accommodated applicants.

Phelps argues that the affidavit from her treating physician, Dr. Lin, is substantial evidence that her ADHD substantially limits her reading and concentration abilities. Dr. Lin's affidavit does purport that Phelps' ADHD diagnosis limits her ability to read, concentrate, and think, but it does not state how or why this is so nor does it opine on how extensive the impairment is. It only concludes that because of Phelps' diagnosis she is entitled to

_____

[2] *See* https://www.ncbex.org/statistics-research/bar-exam-results-jurisdiction#feb2024 (last visited on January 10, 2024).

15

accommodations without any discussion of the reasonableness of the accommodations.

The reasonableness of a bar applicant's requested accommodations has been analyzed by the Supreme Court of South Dakota. *LaFleur*, 722 N.W.2d at 559. In *LaFleur*, a bar exam applicant had established the need for accommodations through psychological testing for his ADHD and major depressive disorder. *Id.* at 560-61. The South Dakota Bar of Examiners denied the applicant's requested accommodation of double the time to complete the bar exam but granted him time and a half. *Id.* at 661. On appeal, the applicant argued the board's decision violated the ADA and he was entitled to double the time to complete the bar exam. *Id.* When determining what accommodations were reasonable, the court embraced the opinions and conclusions of the licensed psychologist hired by the South Dakota Bar of Examiners. *Id.* at 565. It noted that accommodation issues for the bar exam involved matters surrounding a particular exam that is administered by the board of examiners, and the administrative decisions of the board of examiners should be given weight by the court. *Id.* at 562. For the applicant to prevail on his claim, he needed to prove three facts: (1) he was disabled pursuant to the ADA; (2) his requested accommodations were reasonable; and (3) his request was denied. *Id.* at 563; *see also D'Amico v. New York State Bd. Of Law Exam'rs*, 813 F.Supp. 217, 221 (W.D.N.Y. 1993); *Cox v. Alabama State Bar*, 330 F.Supp.2d 1265, 1267 (M.D. Ala. 2004).

The court decided to embrace the opinions of the board's hired psychologist, Dr. Ranseen, when determining the reasonableness of the applicant's request. *LaFleur*, 772 N.W.2d at 564-65. It was Dr. Ranseen's opinion that the applicant's request of double the time to take the exam was unreasonable, and determined he would only need time and a half to complete the exam. *Id.* at 565. Dr. Ranseen also served on the board of multiple other states to help determine what requested accommodations bar applicants should be granted. *Id.* Though never physically examining the applicant directly, Dr. Ranseen reviewed the applicant's file two separate times. *Id.* The court determined that Dr. Ranseen was more qualified and experienced in determining accommodations pursuant to the ADA for the bar exam as compared to the applicant's own treating physician. *Id.* Thus, the court concluded the board had not erred by denying the applicant's requested accommodations. *Id.*

In the current case, Phelps' treating physician also believes she should be entitled to her requested accommodations due to her ADHD diagnosis, which includes a private room, time and a half to complete the exam, and extra breaks. However, two separate physicians hired by the KBBE, Dr. Allen and Dr. Gordon, determined that Phelps did not need such accommodations. Like Dr. Ranseen, both Dr. Allen and Dr. Gordon serve the KBBE to review NST accommodation requests and provide expertise to the NST Committee when determining adequate accommodations for bar exam applicants. They both independently came to the same conclusion: that Phelps provided no

17

substantial medical evidence as to her current cognitive function and that she did not need the additional time she requested or any of her other accommodations requests, despite the fact she did receive a private room for the two times she completed the bar exam.

Without any other documentation to help explain how her current cognitive function makes her requested accommodations reasonable, especially given the fact that she has mitigated her ADHD by taking medication, we see no reason to disagree with Dr. Allen and Dr. Gordon. *Sutton*, 527 U.S. at 483, 487. SCR 2.082(1) requires the bar exam to be administered in "a manner that is fair and equitable" and, because Phelps has not demonstrated how her ADHD symptoms cause substantial impairment in her life, we hold there is no basis to conclude that denying her requested accommodations was unfair or inequitable. *Poole*, 694 S.W.3d at 399.

### III.   CONCLUSION

For the foregoing reasons, we deny Phelps' petition.

All sitting.  All concur.

Entered: February 20, 2025

_____
CHIEF JUSTICE

18